Mark G. Worischeck/Bar No. 011147
Ryan P. Sandstrom/Bar No. 029862
**SANDERS & PARKS, P.C.**
3030 North Third Street, Suite 1300
Phoenix, AZ  85012-3099
Direct Phone: (602) 532-5795
Direct Fax:    (602) 230-5054
Mark.Worischeck@sandersparks.com
Ryan.Sandstrom@sandersparks.com

Attorneys for Plaintiff Hanover Insurance Company

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Hanover Insurance Company,  a Delaware corporation,<br><br>                            Plaintiff,<br><br>v.<br><br>Vemma International Holdings, Inc., an Arizona corporation; Vemma Nutrition Company, an Arizona corporation; and Benson K. Boreyko, an individual,<br><br>                            Defendants. | Case No.:<br><br>**COMPLAINT  FOR DECLARATORY JUDGMENT** |

Plaintiff Hanover Insurance Company ("Hanover"), files its Complaint for Declaratory Judgment pursuant to 28 U.S.C. § 2201, *et seq.* against Defendants Vemma International Holdings, Inc., Vemma Nutrition Company (collectively, "Vemma"), and Benson K. Boreyko, and alleges as follows:

### I.   INTRODUCTION

1.      This lawsuit involves an insurance coverage dispute.   Defendants are seeking coverage for an underlying lawsuit that alleges Defendants operated an international "pyramid scheme" which "targets young adults, including college students" to sell dietary supplements, and bilking these young consumers out of more than $185 million. Specifically, on August 17, 2015, the Federal Trade Commission ("FTC") filed a lawsuit against Defendants for their alleged violations of the FTC Act for operating of an

illegal pyramid scheme (the "FTC Lawsuit").  On September 18, 2015, the Arizona District Court granted a Preliminary Injunction against Defendants, stating "[t]he evidence before the Court leaves little doubt that the FTC will ultimately succeed on the merits in demonstrating that Vemma is operating a pyramid scheme" and finding the FTC has a "likelihood of success on the merits in demonstrating Vemma and Mr. Boreyko are operating a pyramid scheme."

2.      Hanover issued certain "claims-made" Private Company Management Liability Insurance Policies to Defendant Vemma. Specifically, the 2015-16 Policy expressly cautions:

> **NOTICE: THE LIABILITY COVERAGE PARTS ARE WRITTEN ON A CLAIMS-MADE BASIS. SUBJECT TO ITS TERMS, THIS POLICY APPLIES ONLY TO <u>CLAIMS FIRST MADE</u> AGAINST THE INSUREDS <u>DURING THE POLICY PERIOD</u>** (Underlying added, capitals and bold in original.)

Here, the FTC Lawsuit was filed during the Hanover 2015-16 Policy Period.  However, the Policy also provides "all **Related Claims** will be considered as a single **Claim** made in the **Policy Period**…in which the earliest of such **Related Claims** was first made."

3.      Indeed, on February 9, 2012, during the Hanover 2011-2012 Policy Period, a company called BLS, LLC ("BLS") commenced an arbitration proceeding (the "Arizona Pyramid Arbitration") against Vemma and Boreyko in Arizona alleging that Vemma was "an illegal pyramid promotional scheme under state and federal law."  BLS sought more than $200,000 in damages against Vemma including under the Arizona Pyramid Scheme statute.  The Arizona Pyramid Arbitration was a "Claim" that should have been reported to Hanover, but was not.

4.      Then, beginning during the Hanover 2012-13 Policy Period, identical to the FTC Lawsuit, more than 100 similar Consumer Complaints (of which many are

"Claims") were filed against Vemma (before the Oregon Department of Justice, the Arizona Better Business Bureau, and the FTC) alleging Vemma was a "pyramid scheme" – *i.e.,* "[my teenage son] made the mistake of buying into the pyramid product," "Vemma operates as a…pyramid scheme, where income is primarily derived from signing up new members rather than sales of actual products," "[Vemma] is the standard ponzi/pyramid scheme.  The problem I have is them targeting MINORS to do their dirty work.  Adults know better, kids do not" (the "Consumer Complaints").

5.      In addition, on June 10, 2013, Italian regulators (*i.e.*, the Italian FTC) commenced a proceeding against Vemma for its alleged operation of an illegal pyramid scheme in Italy, in violation of the Italian Consumer Code (the "Italian Proceeding").  On March 10, 2014, the Italian proceeding found Vemma's sale of dietary supplements was an illegal pyramid scheme in violation of Italian laws, and a fine and judgment were entered against Vemma.

6.      Because the pyramid-scheme allegations of the FTC Lawsuit (filed in the 2015-16 Policy Period) are identical to the pyramid-scheme allegations of the "Claims" made during the earlier Hanover Policy Periods (*i.e.*, the Arizona Pyramid Arbitration, more than 100 Consumer Complaints (including an Oregon DOJ Claim), and the Italian Proceeding), and because the Policy provides all "related" Claims constitute "a single **Claim**" and "made in the **Policy Period**…in which the earliest of such **Related Claims** was first made" – *i.e.*, the 2011-12 Policy Period, the FTC Lawsuit is not a claim that was <u>first made</u> during the Hanover 2015-16 Policy Period, precluding coverage for the FTC Lawsuit under that Policy.

7.      Under the Notice Provisions, Defendants were required to provide to Hanover "written notice of the 'Claim',…as soon as practicable <u>during the 'Policy Period'</u>…<u>but in no event later than 90 days after such 'Claim' is first made</u>."  Defendants never provided notice to Hanover of the Arizona Pyramid Arbitration, the Consumer Complaints, nor of the Italian Proceeding, so these "Claims" are not afforded coverage

under the Policy.  And because the FTC Lawsuit is a "related" Claim, Vemma's failure to provide notice of the original Claims (the Arizona Pyramid Arbitration, the Consumer Complaints, the Italian Proceeding) similarly means there is no coverage under the Policy for the FTC Lawsuit.

8.      Separately, the Policy contains an Unfair Business Practices Exclusion that bars coverage for "any Claim" (*e.g.*, lawsuit) "directly or indirectly based upon, arising out of, or attributable to…unfair business practices." Each and every substantive allegation against Defendants in the FTC Lawsuit is set forth under the heading, "**DEFENDANTS' BUSINESS PRACTICES**" (emphasis in original), and includes four causes of action, each stating that Defendants' acts or omissions "constitute a deceptive act or practice" in violation of the FTC Act.  Accordingly, the Unfair Business Practices Exclusion applies to bar coverage under the Policy for the FTC Lawsuit.

9.      Alternatively, because Vemma failed to disclose the Arizona Pyramid Arbitration, more than 100 Consumer Complaints, and/or the Italian Proceeding in Hanover's Policy Application, Hanover's Known Claim Exclusion applies to bar coverage for the FTC Lawsuit, as well as the application of other Policy terms, conditions and exclusions that bar coverage for some and/or all of the FTC Lawsuit.

10.     An actual controversy exists between Defendants and Hanover regarding Hanover's purported obligation to provide them with a defense and indemnity for the FTC Lawsuit, which cannot be resolved without a declaration of the rights and responsibilities of the parties by this Court.

## II.   **PARTIES**

11.     Plaintiff Hanover is a company incorporated under the laws of Delaware with its principal place of business at 440 Lincoln Street, Worcester, Massachusetts.

/ / /

/ / /

4

12.     On information and belief, Defendant Vemma International Holdings, Inc., is an Arizona corporation with its principal place of business at 1621 West Rio Salado Parkway, Tempe, Arizona 85281.

13.     On information and belief, Defendant Vemma Nutrition Company, is an Arizona corporation with its principal place of business at 1621 West Rio Salado Parkway, Tempe, Arizona 85281.

14.     On information and belief, Defendant Benson K. Boreyko is a resident and citizen of Arizona.[1]

### III.     JURISDICTION AND VENUE

15.     This court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 respecting diversity jurisdiction insofar as it involves citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

16.     Venue is appropriate under 28 U.S.C. § 1391 because a substantial part of the relevant events occurred in this District, including the issuance of the Policy to Defendants at 8322 E. Hartford Drive, Scottsdale, Arizona 85255.

### IV.     BACKGROUND FACTS

**A.     The Relevant Policies**

17.     For the purposes of this Complaint, Hanover issued two policies to Vemma of relevance, both are a Private Company Management Liability Insurance Policy, with a policy number of LH4-8827059, with a limit of liability of $5,000,000, and with a Policy Period of: (i) August 1, 2015 to August 1, 2016 (the "2015-16 Policy"); and (ii) August 1, 2011 to August 1, 2012 (the "2011-12 Policy").

---

[1] In Defendant Benson K. Boreyko's Answer to the FTC Lawsuit, which is filed in the United States District Court for the District of Arizona, he states that, "Boreyko admits…that he resides in this District." *See*, FTC Lawsuit, 2:15-cv-01578-JJT, Doc. #125, ¶8.

18.     A true and correct copy of the 2011-12 Policy is attached hereto as Exhibit 1 and is incorporated herein by reference.

19.     A true and correct copy of the 2015-16 Policy is attached hereto as Exhibit 2 and is incorporated herein by reference.

20.     Both the 2011-12 Policy and the 2015-16 Policy are "claims-made" policies.

21.     Specifically, in the Policy Declarations for the 2015-16 Policy, it states (in CAPITAL LETTERS and in **bold**):

> **NOTICE: THE LIABILITY COVERAGE PARTS ARE WRITTEN ON A CLAIMS-MADE BASIS. SUBJECT TO ITS TERMS, <u>THIS POLICY APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD OR ANY APPLICABLE EXTENDED REPORTING PERIOD.</u>** (Underlying added.)

22.     Thereafter, on the top of the first page of the Directors and Officer ("D&O") Coverage Part for the 2015-16 Policy, it states (in CAPITAL LETTERS and in **bold**):

> **NOTICE: THIS COVERAGE PART IS WRITTEN ON A CLAIMS-MADE BASIS. SUBJECT TO ITS TERMS, <u>THIS COVERAGE PART APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD OR ANY APPLICABLE EXTENDED REPORTING PERIOD.</u>** (Underlying added.)

23.     The respective relevant Insuring Provisions of the 2015-16 Policy (Sections I.A. and B. of the D&O Coverage Part), states:

> The **Insurer** will pay on behalf of the **Insured Entity**, **Loss** which the **Insured Individual** is legally obligated to pay due to a <u>**Claim**</u> first made against the **Insured Individual** during

6

the **Policy Period**, or the Extended Reporting Period if applicable, but only to the extent the **Insured Entity** indemnifies the **Insured Individual** for such **Loss**.

The **Insurer** will pay on behalf of an **Insured Entity**, **Loss** which the **Insured Entity** is legally obligated to pay due to a **Claim** first made against the **Insured Entity** during the **Policy Period**, or the Extended Reporting Period if applicable. (Emphasis added.)

**B.     The "Claims" Against Vemma and/or Boreyko**

**1.     During the 2011-12, 2012-13, 2013-14, and the 2014-15 Policy Periods**

24.     Under the terms of the 2011-12 Policy, 2012-13 Policy, the 2013-14 Policy, and/or the 2014-15 Policy, "Claim" is defined to include: "[a]ny written demand presented for monetary 'Damages' or non-monetary relief for a 'Wrongful Act'".

25.     A true and correct copy of the 2012-13 Policy is attached hereto as Exhibit 3 and is incorporated herein by reference.

26.     A true and correct copy of the 2013-14 Policy, without its application, is attached hereto as Exhibit 4 and is incorporated herein by reference.

27.     A true and correct copy of the 2014-15 Policy is attached hereto as Exhibit 5 and is incorporated herein by reference.

**a.     The Arizona Pyramid Arbitration**

28.     On or about February 29, 2012, BLS, LLC ("BLS") submitted a "Demand for Arbitration" against Vemma with the American Arbitration Association (the "Arizona Pyramid Arbitration").

29.     On or about April 7, 2012, BLS submitted a second "Demand for Arbitration" naming Vemma and adding Defendant Boreyko.

30.     On or about September 3, 2012, BLS submitted a third "Demand for Arbitration" naming Vemma and Boreyko.

31.     In the Arizona Pyramid Arbitration, BLS asserted claims against Defendants for violations of the Federal RICO statute, the Arizona "Pyramid" statute, common law fraud, and securities fraud under Arizona law.

32.     BLS alleged in its "Demand for Arbitration" that Vemma "is an illegal pyramid promotional scheme under state and federal law."

33.     In the "Demand for Arbitration", BLS sought more than $200,000 in damages from Vemma arising out of an alleged illegal pyramid scheme.

34.     The February 29, 2012 "Demand for Arbitration" (*i.e.*, the Arizona Pyramid Arbitration) was a "Claim" as defined by the 2011-2012 Policy Period.

35.     Vemma received a copy of the February 29, 2012 "Demand for Arbitration" between August 1, 2011 and August 1, 2012.

36.     Boreyko received a copy of the April 7, 2012 "Demand for Arbitration" between August 1, 2011 and August 1, 2012.

37.     Vemma and Boreyko were represented by the law firm Coppersmith Schermer & Brockelman PLC in the Arizona Pyramid Arbitration.

38.     A true and correct copy of the February 29, 2012 "Demand for Arbitration" is attached hereto as Exhibit 6 and is incorporated herein by reference.

39.     A true and correct copy of the April 7, 2012 "Demand for Arbitration" is attached hereto as Exhibit 7 and is incorporated herein by reference.

40.     A true and correct copy of the September 3, 2012 "Demand for Arbitration" is attached hereto as Exhibit 8 and is incorporated herein by reference.

**b.     The Italian Proceeding**

41.     During the 2012-13 Policy Period, on June 10, 2013, Italian regulators (*i.e.*, the Italian FTC) commenced a proceeding against Vemma for its alleged operation of a pyramid scheme in Italy, through its sale of dietary supplements, in violation of the Italian Consumer Code (the "Italian Proceeding").

42.     On March 10, 2014, in the Italian Proceeding, Vemma's business practices were found to be an illegal pyramid scheme in violation of Italian laws, and a fine and judgment were entered against Vemma (the "Italian Order").

43.     The Italian Consumer Code, Article 23, Par. I, letter p), defines as "unfair the conduct of a business organization" any business that starts, manages or promotes "A pyramid promotional scheme where consumers provide a contribution in exchange for the possibility of receiving payment mainly from the enrollment of other consumers into the scheme, rather than from the sale or consumption of products."

44.     The Italian Order states that, "in pyramid sales schemes the sponsor's income does not depend only on the total sales volumes generated together with the associates he/she sponsors, (to which, moreover, they are not directly linked) but results mainly by the enrollment of other persons in the sales or promotional network, this being the primary aspect of this scheme, which determines the earnings level that will be recognized to sponsor…. In other words,… in a pyramid sales scheme the product or service to be sold becomes secondary, simply providing the pretext and opportunity to enroll other consumers to participate in the pyramid by making personal orders (purchases), thus artificially enabling the scheme to feed on itself."

45.     The Italian Order stated "that the Vemma network is in fact a pyramid scheme," because Vemma "makes a profit mainly from the enrollment of associates and the purchases of product made directly by the latter, and where the associates' promotional effort is aimed at constantly enrolling new associates and creating a purchase network (with purchases made by the participants themselves), rather than generating product sales."

46.     A true and correct copy of the translation of the March 10, 2014 Italian Order in the Italian Proceeding is attached hereto as Exhibit 9 and incorporated herein by reference (the translated decision in the Italian Proceeding is also attached to the FTC Lawsuit, 2:15-cv-01578-JJT, Doc. 13-1).

c.    **The Consumer "Claims"**

47.    During the term of the 2012-13 Policy Period (from August 1, 2012 to August 1, 2013), the 2013-14 Policy Period (from August 1, 2013 to August 1, 2014), and the 2014-15 Policy Period (from August 1, 2014 to August 1, 2015), Vemma received notice of more than 100 Consumer Complaints from the Oregon DOJ, the Federal Trade Commission ("FTC"), and the Arizona Better Business Bureau, with more than three dozen alleging that Vemma was an illegal "pyramid scheme."

(1.)    **The Oregon DOJ Claim**

48.    By letter dated December 4, 2012, the Oregon Department of Justice, Civil Enforcement Division ("Oregon DOJ"), advised Vemma that it had received a complaint from Barb Raines (the "Oregon DOJ Claim").

49.    A true and correct copy of the December 4, 2012 letter from the Oregon DOJ is attached hereto as Exhibit 10 and is incorporated herein by reference.[2]

50.    By email dated December 10, 2012, from Ms. Michelle Lottner of Vemma (Compliance Analyst) to Ms. Raines, Ms. Lottner stated: "Dear Ms. Raines, This letter is in response to the complaint you filed with the Oregon Department of Justice dated November 21, 2012 stating that Vemma is a pyramid type of program targeting high school students (complaint FF11267-12-Barb Raines)."

51.    A true and correct copy of Ms. Lottner's December 10, 2012 email is attached hereto as Exhibit 11 and incorporated herein by reference.

(2.)    **The Arizona BBB Claims**

52.    In correspondence dated December 22, 2012, from Ms. Andrea Garcia of the Better Business Bureau ("BBB") to Ms. Michelle Cohen of Vemma, Ms. Garcia sets forth a complaint against Vemma received by the BBB from Angela Ramon.

---

[2] Exhibit 10 does not contain the purported "Enclosure: Consumer Complaint EZ-E1".

53.    A true and correct copy of the correspondence dated December 22, 2012, from Ms. Garcia to Ms. Cohen is attached hereto as Exhibit 12 and incorporated herein by reference.

54.    As stated in Ms. Ramon's Claim: "I am Nicky's mom, Nick was approached about Vemma and made the mistake of buying into the pyramid product. The initial cost was $150 for product/shipping.  As in most cases, Nick was only able to find one person who would buy into this scheme.  He ordered the first product in October, and the next autoship product came in November.  Nick is a freshman in college and, of course, the most college kids, they want to make quick money.  I didn't find out about this until Nick received an overdraft on his November account when the autoship came through.  I, at that point in time (12/4/12), contacted Vemma and spoke with Kevin and cancelled the product (Conf #3904506).  I was told that Nick could only return the latest pack.  They would not give him a refund for the first product that was delivered in October…[a]fter several days of not receiving anything and not receiving a refund and Derek not taking my calls, I called again and spoke with Alecia on 12/20/12. She was very friendly and said it would take 3-4 weeks for a refund, but did speed up the process and had the refund deposited on 12/21/12.  However, Firstbank called to inform me that only $130 had been deposited (because I filed a dispute with my bank over Vemma, they are watching the account carefully).  I did ask for information where legal matters should be sent to, and they were very reluctant and after several conversations with her supervisor, they finally provided me an address and email (but said there was no number).  I don't really want to get my lawyer involved, so I thought I would try this route first…[i]t cost Nick $223.44 for product he cannot get rid of.  I understand young college students are adults, but I also believe that Vemma preys on these young adults because, although they may be book smart, they are not world smart.  It's a lesson Nick has learned, but I'm hoping it will not continue to happen to other individuals."

55.     Thereafter, Vemma (by Ms. Michelle Lottner, Compliance Analyst) responded in writing to the BBB (to Ms. Garcia) about the allegations made by Ms. Ramon, and Vemma stated: "In response to Angie's allegations that Vemma is a pyramid-type business, we offer the following: Vemma was incorporated in September 2004 in the State of Arizona, Vemma's parent company, New Vision USA, Inc. was established in 1995 by the Boreyko family and is a proud member of both the Direct Selling Association and Better Business Bureau® of Central/Northern Arizona…any company that ties compensation and financial success solely to recruiting efforts rather than actual sales for ultimate use by Consumers is an illegal pyramid scheme and ultimately destined to collapse…Vemma has also adopted and enforces other policies to ensure compliance with federal and state laws and to make certain that many of the abuses commonly associated with illegal pyramids, such as inventory loading, cannot occur."

56.     A true and correct copy of the correspondence from Ms. Lottner to Ms. Garcia is attached hereto as Exhibit 13 and incorporated herein by reference.

57.     In correspondence dated January 16, 2013, from Ms. Alexandria Nock of the BBB to Ms. Michelle Cohen of Vemma, Ms. Nock sets forth a complaint against Vemma received by the BBB from Mike Gleeson, which states: "Vemma operates as a virtual pyramid scheme, where income is primarily derived from signing up new members rather than sales of actual products."

58.     A true and correct copy of the January 16, 2013 correspondence from Ms. Nock to Ms. Cohen is attached hereto as Exhibit 14 and incorporated herein by reference.

59.     By email dated January 21, 2013 from Michelle Lottner of Vemma to Ms. Nock, the email states: "Mr. Gleeson's complaint states that Vemma operates as a virtual pyramid scheme, where income is primarily derived from signing up new members rather than sales of actual products….".

60.     A true and correct copy of the email dated January 21, 2013 from Ms. Lottner to Ms. Nock is attached hereto as Exhibit 15 and incorporated herein by reference.

61.     By correspondence dated February 7, 2013 from Ms. Alexandria Nock of the BBB to Ms. Michelle Cohen of Vemma, Ms. Nock sets forth a complaint against Vemma received by the BBB from Amy Dunagan, which complains: "I have been repeatedly contacted by both email and cell phone by marketers that left Herbalife and started with Vemma. I contacted Vemma when they started and they denied having those members as part of their company. They have my number and have been sending automated calls to it promoting their business. I am certain it is members of Vemma because they have sent me links to their website and tonight a text message promoting it. They are supposedly an MLM company, but I don't see these people trying to sell any product. They repeated want you to buy in and be a part of their team. It is a pyramid scheme and they are attempting it with another company. I believe I this very unscrupulous to take numbers with you and continue to harass people when they have not contacted you....I want them to stop and I do not think they should be allowed to continue this practice."

62.     A true and correct copy of the correspondence dated February 7, 2013 from Ms. Nock to Ms. Cohen is attached hereto as Exhibit 16 and incorporated herein by reference.

63.     In correspondence from Ms. Michelle Lottner of Vemma to Ms. Nock of the BBB, Ms. Lottner acknowledges "complaint 9412328 from Amy Dunagan" and "Ms. Dunagan's claim that Vemma is a pyramid scheme."

64.     A true and correct copy of the correspondence from Ms. Lottner to Ms. Nock is attached hereto as Exhibit 17 and incorporated herein by reference.

65.     In correspondence dated April 4, 2013 from Ms. Michelle Cohen (Compliance Analyst) of Vemma to Ms. Alexandra Nock of the BBB, Vemma

acknowledged being accused of operating a pyramid scheme in a complaint filed by Kristina Brennen, stating: "[i]n response to Ms. Brennen's allegations that Vemma is a pyramid-type business."[3]

66.      A true and correct copy of the correspondence dated April 4, 2013 from Ms. Cohen to Ms. Nock is attached hereto as Exhibit 18 and incorporated herein by reference.

67.      In correspondence dated August 27, 2013 from Ms. Samantha Oberdank of the BBB to Ms. Michelle Lottner of Vemma, Ms. Oberdank sets forth a complaint against Vemma received by the BBB from Lisa Vigna, which states: "This company is soliciting money from high school students ($500) and putting high pressure sales, and the claim of making a lot of money as part of the enticement.  This cannot be legal to get teenaged kids, not even 18 yet, to sell their product.  Not actually selling the product itself, but getting their friends to buy into the company for $500 and then turning around and trying to solicit their friends and classmates to do the same – which is how you make money.  It is the standard ponzi/pyramid scheme.  The problem I have is them targeting MINORS to do their dirty work.  Adults know better, kid do not…I would like the company to pull out of Basking Ridge NJ and stop enticing the High School kids and to cease any and all operations with my town and any towns surrounding the immediate area."

68.      A true and correct copy of the correspondence dated August 27, 2013 from Ms. Oberdank to Ms. Lottner is attached hereto as Exhibit 19 and incorporated herein by reference.

69.      By correspondence from Ms. Michelle Lottner of Vemma to Ms. Oberdank, Vemma acknowledged being accused of operating a pyramid scheme, stating: "regarding

---

[3] A copy of Ms. Kristina Brennen's April 2, 2013 complaint (ID No. 9485820) was not provided by Vemma to Hanover.

14

complaint ID 9683077 from Lisa Vigna…Ms. Vigna's claim that Vemma is a pyramid/ponzi scheme…."

70.     A true and correct copy of the correspondence from Ms. Michelle Lottner of Vemma to Ms. Oberdank is attached hereto as Exhibit 20 and incorporated herein by reference.

71.     By correspondence dated August 29, 2013 from Ms. Samantha Oberdank of the BBB to Ms. Michelle Lottner of Vemma, Ms. Oberdank sets forth a complaint against Vemma received by the BBB from Julia Guise, which complains: "This is a multiple issue.  My son was presented with a business opportunity, from his friend to join Vemma, as a 'brand partner' with the potential to 'retire his parents' and other unrealistic promises.  He was given a minor/parent/legal guardian application form for me to sign to give my son consent for him to become a 'brand Partner' of the Vemma Nutrition Company.  My son is 16.  I did not give my consent and I am still in possession of this application.  Without my parental consent on 8/27/13 they set my son up with a website to market and sell their products, and on 8/28/13 they withdrew (fraudulently) $580.83 my sons teen checking account…Disputed Amount: $580.83…Desired Settlement: Full refund and held accountable for their unlawful/unethical business practices."

72.     A true and correct copy of the correspondence dated August 29, 2013 from Ms. Oberdank to Ms. Lottner is attached hereto as Exhibit 21 and incorporated herein by reference.

### (3.)     The FTC Consumer Claims

73.     On July 31, 2014, Ms. Allison Tengan of Vemma made a Freedom of Information Act ("FOIA") request to the FTC.

74.     By email dated August 4, 2014 from Mr. Jonathan Hill of the FTC to Ms. Allison Tengan of Vemma, Mr. Hill stated: "This acknowledges receipt of your FOIA request to the Federal Trade Commission dated Thursday July 31, 2014" and "[f]or your convenience, please be advised that all consumer complaints received by FTC through

June 15, 2014 regarding Vemma are publicly available on the FTC website at http://www.ftc.gov/about-ftc/foia/foia-reading-rooms/frequently-requested-records".

75. By email dated August 4, 2014 from Ms. Allison Tengan of Vemma to Mr. Jonathan Hill of the FTC, Ms. Tengan stated: "I am looking to find all consumer complaints, investigative records and public records for Vemma Nutrition Company."

76. A true and correct copy of the various emails (dated July 31, 2014, August 4, 2014 (two), and August 5, 2014) between Ms. Tengan of Vemma and Mr. Hill of the FTC are attached hereto as Exhibit 22 and incorporated herein by reference.

77. No later than August 4, 2014, Vemma was on notice of the following complaint on the FTC website:[4] "As a U.S. citizen, I am very concerned about a company called VEMMA that is based in Scottsdale, AZ.  The CEO and founder of VEMMA is B.K. Boreyko.  The purpose of this letter is to file a complaint about this company with your office.  It is my perception that this company, VEMMA, is run on a pyramid based business.  Furthermore, it is my understanding that any business that is structured in this manner is a illegal.  Unfortunately, my son has been introduced to this company (about a year ago) and has dropped out of college with the pursuit of getting rich without having to go to college.  The audience and recruitment that VEMMA targets are high school graduates and enrolled college students.  Their website and social network marketing entices youth to drop out of college and join their company to earn an unlimited income while bypassing higher education.  So, in an indirect way, VEMMA influences this group of people by advertising that they can get rich quickly on a high school diploma.  Please take the time to visit http:www.vemma.comopportunityget-paid.cfm and go to the 'Opportunity' section and drop down to 'how to get paid' section and view a video that tries to pursued and influence youth.  http:www.vemma.comopportunityget-paid.cfm  In my personal family life, this company has interfered with my sons desire to complete his

---

[4] All entries from the FTC website that are included with this Complaint are set forth as reflected on the FTC website, with the same spelling and grammatical errors as set forth on the website.

college degree.  He was in his third year of college when he dropped out.  The basis of VEMMA is a get rich program that entices young minds to pursue a part time job making an unlimited income and earning a free car for their efforts.  I am a concerned father and my son has been influenced with this company in a negative way.  His mother and I have seen dramatic change in his behavior and ability to think for himself.   As his father, I am very concerned about the misleading and negative influence that VEMMA has had with my son.  Not only did he drop out of college, but he has been living on the streets in his car for the past three weeks.  My son has been persuaded, by VEMMAs training and negative influences, to have unrealistic expectations for earning an income.  I believe he is not able to think for himself, yet turns to VEMMA for guidance over his family.  As a safety precaution, his mother and I are concerned that our son has been brainwashed with this company tactics and methods.  Please accept this letter as filing a complaint with VEMMA. PS9000: Vemma Nutritional Drink Other-Other Update: 07/05/2013 Consumer wanted to update his complaint that this energy drink is causing his son to run away and misbehave. His son is involved with political group, parmerlj UPDATE 7/12/13: The consumer wants the FTC to labwork on the Vemma. drink. He want to know if there are any drug in the drink that are not listed on the lable. RFields"

78.    No later than August 4, 2014, Vemma was on notice of the following complaint on the FTC website: "I was approached and asked to join this company. They stated you make alot of money quick and just join its only 500$. They said to me 'you dont have to sell the product, you only need to get more people to join and thats how we will be rich.' This company is a pyramidPonzi scam and it is getting away with making millions of dollars. If you dont have to sell any product and just get paid of people joining the company that would classify this as a PyramidPonzi scheme. The founder has been in trouble with you guys before and this needs to be looked into. I never heard of an energy drink mailing millions of dollars that isnt sold in ONE store in the whole United States. The drink is a cover up and they are pulling one over on you. They dont advertise

anything they say thats what the people do instead. Not only is Benson Boreyko lying and stealing from his 'brand partners' he is getting them to lie to everyone else to help him scam more millions out of people. This is going around at all college campuses in the US. They ask you to join and just come to a meeting usually in a basement in someones house where then they lie to you to convince you to join company for 500$. How is a company making millions of dollars when you cant go into a 711 or a gas station or convenience store to buy it. Because it is a SCAM! Open up your eyes and realize the lies of Boreyko and the Vemmaverve company. On the site they have a chart which it shows the percentage of the company earnings with the percentage of the people in the company. 90 of the company isnt making over 7000$ a year but the top 3 is making all the millions. They are getting the people to join for 500$ and keeping it thats why 90 of the company is only making 7000$ a year!   This needs to stop please look into this and put an end to it."

79.    No later than August 4, 2014, Vemma was on notice of the following complaint on the FTC website: "MAIL: Consumer's letter was forwarded by the U.S. Securities and Exchange Commission. Consumer is anonymous in his letter. Consumer states that Vemma is a pyramid scheme. Consumer states the company is offering a business opportunity but no salaries are involved and you are only paid if you bring people in."

80.    No later than August 4, 2014, Vemma was on notice of the following complaint on the FTC website: "I am interested in registering a general complaint against Vemma Nutrition Company over concern for the general public. While I havent been contacted by anyone in the company, I have seen interactions by the companys brand partners (via social media) that are cause for concern in the community where I live as well as the rest of the United States. These interactions include soliciting high school students to join their company as a brand partner, encouraging college and high school students to drop out of school to work for Vemma full time and creating hostile

environments between themselves, family and friends.   There is fairly significant evidence that Vemma is operating a product based pyramid scheme. While there are dozens of companies like this operating out there, I believe that this company is a far greater threat to our future than other Multi Level Marketing companies due to the demographic that theyre targeting. Please consider looking further into the practices this company is using to recruit employees as well as how theyre generating income.  I feel that at the rate this company is expanding, it could cause significant harm in developing the next generation of leaders in this country.  Thank you."

81.    No later than August 4, 2014, Vemma was on notice of the following complaint on the FTC website: "I believe Vemma Nutrition Company is a Pyramid scheme. I have had many of their 'Brand Partners' attempt to solicit money from me, claiming that they have a 'great business opportunity' and all I have to do is find other 'brand partners' to be put under me to make money. As a part of their business model one does not actual sell a legitimate product but rather is paid by getting others to 'market their product', and must pay an initial fee to receive their product, which they do not actual sell. I have seen many fall victim to this scheme and am wondering why such business practices are allowed to go on."

82.    No later than August 4, 2014, Vemma was on notice of the following complaint on the FTC website: "Our college freshman daughter was contacted about a 'business opportunity.' She was to invest approximately $500 and would receive Verve energyhealth drinks. (She personally invested $150 before approaching us about giving her the balance.) She was also encouraged to get on their automatic replenishment service in order to make the most money. Her primary objective was really not to sell these drinks but was to encourage her friends to join this opportunity. The more people she signed up, the more she would receive back. Little focus was to be placed on actually selling the drink - they would either 'sell themselves' or would be used in the actual recruiting process of the friends. From everything I heard and from my research this

appears to be a pyramid scheme thinly veiled by having a product. They are targeting college students with little experience and big dreams. They are also capitalizing upon the fact that it is easy for these students to go into debt. I urge you to please investigate this company. Representatives state that this couldnt be a pyramid scheme because that is illegal."

83.    No later than August 4, 2014, Vemma was on notice of the following complaint on the FTC website: "Consumer called to report that his son signed up to bring sales into Vemma and states that its a pyramid scam selling an energy drink.  Consumer had paid $500 upfront and the first monthly payment of $160.  Consumer states that this is being marketing to college kids.  Consumer states that his son is still sucked into this and believes that he is going to make money.  Consumer was drafted by another student. Consumer states that no sales are being made to the public all sales are being made to other members."

84.    No later than August 4, 2014, Vemma was on notice of the following complaint on the FTC website: "This is an Multi-Level Marketing company. I was not contacted by any employee of the company but by a friend who bought their Verve energy drink as a product and is an recuiter with Vemma. Without telling me too much about it, he invited me to a presentation about the product. It was conducted in a house with 50 other young adolescents. A few of the veteran recuiters to tell us about a way to make money. Now they were not even selling the product. They briefly glossed over some bullshit about Vemma products its creation, nutritional value, and how it fights cancer. But most of the presentation was focused on how we can make 'tons' of money 'with a proven method.' In fact, they said anyone can make money with some work and an intial investment. They did not care about value of the product itself- most of the recuiters even admitted that it tastes like crap I bet that is why it would never sell in supermarkets or connivence stores. No, rather than promote non existent values they tried to get the 50 or so young people to pay into this ploy by us that we too can start selling

Verve.   The FTC has guidelines about which MLCs are pyramid schemes. Without knowing how Vemma operates in other parts of the nation, it seems very clear that at least the group of Vemma salesmen and saleswomen in this Brooklyn house are just using Vemma products as a tool for a pyramid scheme. The head organizers of this event implied that with their downlines they were the top salespeople in Brooklyn and quickly going to be the best salespeople in New York City. They also mentioned how they traveled to conferences in Las Vegas and meet with Vemma executives and other salespeople. It was implied that the company advises their top salespeople and often shapes recruitment operations.     Bear in mind at this large house gathering, which I am told happens weekly and at a few other locations, there was no marketing at using Verve, the only selling point and only thing they were selling was buying multiple cases of Verve, for hundreds of dollars, so that we can each start selling Verve to our friends and family and become well-off too. What was shocking is the that most of the people that there were targeted were in high school. Admittedly, some of the salesmen were high school students themselves, selling Verve to their peers and classmates. Yet, I am sure that for every teenager, or adult for that matter, who profitably marketed Verve to their personal network there are 50 who failed. It is ridiculous that this is happening in high schools. I am appalled by the level of penetration Vemma had in certain Brooklyn High Schools. Moreover, it is very clear that this group was targeting immigrant and low-income students. A selling point that they touted was 'wouldnt you love to be able to give your parents a few hundred bucks?' As a college graduate with a math degree it was very clear that the Verve networking market was going to get saturated, and that this business model while not only being unsustainable but very predatory. The salepeople were happy to mention success stories to get more people to buy the product so their fat wallets can expand, but they never mentioned how what percentage of people make money or the retention rate. Furthermore, they acted as if anyone could make money recruiting more

people into the Verve market. By simple numerical facts, that is clearly false. At best this business advertises falsely and egregiously but I suspect it is a pyramid sch"

85.     No later than August 4, 2014, Vemma was on notice of the following complaint on the FTC website: "The consumer wanted to remain Annonymous . The consumer said that a company that sells Health Supplements.  The consumer said the company is called Velma.  They make their money by offering consumers money to get people to join their organizations.   The consumer believes this a Pyramid Scheme.  The consumer wanted to point out the company Markets toward Young College Students."

86.     No later than August 4, 2014, Vemma was on notice of the following complaint on the FTC website: "This company is soliciting money from high school students ($500) and putting high pressure sales, and the claim of making alot of money as part of the enticement.  This can not be legal, to get teenaged kids, not even 18 yet, to sell their product.  Not actually selling the product iteself, but getting their friends to buy into the company for $500 and then turning around and trying to solicit their friends and classmates to do the same - which is how you make money. It is the standard ponzi/pyramid scheme. The problem I have is them targeting MINORS to do their dirty work.   Adults know better, kids do not. --- Additional Comments: I would like the company to pull out of Basking Ridge NJ and stop enticing the High School kids and to cease any and all operations with my town and any towns surrounding the immediate area."

87.     No later than August 4, 2014, Vemma was on notice of the following complaint on the FTC website: "I was invited to an 'event' by a close personal friend. The brand partner involved told my friend that he was not to disclose to me the reason for the event. When I arrived, I was introduced to several brand partners. These partners showed me videos meant to be inspirational and told me stories of how the business had supposedly helped them. One person claimed that the product helped get his mother off of medication. I was told that in order to make money, I had to recruit my friends in the

same way that they were attempting to recruit me. They failed to mention that in order to be recruited, you must purchase approximately $150 of their product. In order to make money in their business, your recruits must also purchase their product, from which you earn a commission. They consistently urged me that this business was not a "pyramid scheme" because it was endorsed by Dr. Oz. However, the structure of their business is far too similar to that of a multi-level marketing or pyramid scheme. My close friend fell into their trap and I want to help put a stop to it."

88.     No later than August 4, 2014, Vemma was on notice of the following complaint on the FTC website: "The consumer's father states she got involved in a pyramid scheme with company called Vemma in Tempe. AZ. He states his daughter got involed in the healthe drink section. All you do is recruit people. You buy into different levels. Everytime you get someone to join you get a portion. his daughter purchased the $150 level. They are targeting young kids."

89.     No later than August 4, 2014, Vemma was on notice of the following complaint on the FTC website: "I'm wondering how long this business will last (if it's even legal?) People seem to be making money but it looks like a pyramid scheme to me."

90.     No later than August 4, 2014, Vemma was on notice of the following complaint on the FTC website: "I was approached by b(6) with what he called a 'business opportunity' which actually turned out to be a solicitation to purchase a 'starter kit' for Vemma nutrition co.  After doing my own research and hearing other victims' accounts of their experience with the company, it has become abundantly clear that Vemma is not a Multi-Level Marketing Company as they claim but is in actuality a pyramid scheme, as the only possible way to make money is by recruiting new prospects into the chain. b(6) even stated that the 'Verve' energy drinks were used for promotional purposes only and would not be sold, as the real income comes from the recruitment process."

91.     No later than August 4, 2014, Vemma was on notice of the following complaint on the FTC website: "I was contacted several times this past summer to join

the 'YPR' Vemma MLM organization. I was told I'd be rich quick, I was told I was my own boss, I was told it was NOT a pyramid scheme. Further more, I was almost bullied by those who have joined ( calling me uneducated, ignorant, lazy etc). I do not hold any of those traits. As an eagle scout, college student, and volunteer, I have been and will continue to be a good citizen.     Unfortunately, my friends of many years have joined in spite of my warnings. After a few months of loosing substantial amounts of money to the system they quit. I know one person in my area who has attained the praised BMW. After religiously reading and analyzing the FTC's defining of a pyramid scheme, I am confident that this is just that. -What is the retail price of vemma? Why have I NEVER seen it sold in a store-Technically, once I join, I can throw out the cumbersome cases of vemma because they are just a cover- a symbol of my new subscription-Why promise so many kids wealth? Why feed kids lies and preach that college is not useful anymore, and to be successful you need to take tasks such as soliciting useless products upon your self. They know children want the car, they want to 'be their own boss'. It is obviously who the target audience is.-Why would the CEO and 'wonder child' Alex Morton claim Coke attempted to buy Vemma for 2.2 Billion. Shortly after they both posted this libel on instagram and twitter, it was later revoked as a rumor. Wouldn't the CEO know if it was a rumor first? Sure they took it back, but how many kids saw that and gave them confidence to invest? I know I was younger and less wize, seeing such a claim with a creditable company such as Coke would win me over instantly! Having attended one, I'm aware the Vemma meetings are basically propaganda sessions, filling kids heads with lies. I've even heard one partner claim 'American Capitalism is a pyramid scheme'. You are NOT selling a product. You are simply getting paid to get more people to join. Simple as that. I would really appreciate an investigation, as the number of people I see seriously financially effected by this increasing. For the record, I am not a business major nor am I a business owner. However, I am an engineer who is more than capable of viewing a system and pointing out obviously infidelities."

24

92.     No later than August 4, 2014, Vemma was on notice of the following complaint on the FTC website: "There is a company by the name of Vemma scamming hundreds of high school underage children into joining their pyrammid scheme. They make them buy-in $500, give out free product and then sign up friends to make a $40 commission.My little brother has stopped going to school trying to make his money back, and like him there are hundreds of kids paying hundreds of dollars to this failed energy drink company. PLEASE do something about it!!"

93.     No later than August 4, 2014, Vemma was on notice of the following complaint on the FTC website: "Hi, My 19 year old son recently told me that he became a brand partner with Vemma about 3 months ago.  He was a good student with a promising future, bi-lingual, musically talented, and happily studying as a sophomore in college.  Since becoming involved with Vemma, he is no longer interested in college or music, and tells me Vemma is his only career plan.  I researched the company and found several mis-truths in their videos (BBB rating, NBA, Dr. Oz, prior FTC rulings, etc.) and explained the non-sustainable business model to him.  But it is as though he has been brain washed.  He is buying product monthly as required at about $168 per month and has purchased a 'kit' for $500, so he is probably out about $1000 so far.  He has saved his birthday money, etc. ever since he was a child, so he does have access to a few thousand dollars.  Otherwise, we have saved and pay his tuition and living expenses. I believe marketing a pyramid scheme to naive teen agers is a very evil way to make money.  I suppose losing his money is a lesson for him and I don't really mind that so much.  But I know there are other young people who are not in a good financial position and this would be a terrible hardship to them.  The aspect that I find very troubling is the brain washing and the discouragement of education.  They will say that they have established a tuition reimbursement program, but that is smoke and mirrors.  Their videos and 'motivational' techniques all point out that college is a waste of time and resources.  And the young people of course find that appealing. I am not sure if they are breaking the law

or not.  The emphasis is on recruiting brand partners on your downline, not selling product, which sounds to me like fitting the pyramid model.  But even if not illegal, this company is highly unethical and is ruining our future generation.  I did not warn my son of this kind of business in advance and they seem to have discouraged him from telling me until he was fully integrated so now I cannot seem to reach him.  I suppose he will figure it out eventually but he is losing valuable time in preparing for his future.  I would like to ask that you investigate them and try to find a way to shut them down if at all possible.  I am glad to provide any information that I can to help.  It would also be good if you could warn the colleges and the young people of this kind of business.  It is much easier for them to say no if they are familiar with the concept in advance.  I never imagined that this would be such a problem.  I warned my children of drugs, alcohol, diseases, and credit cards.  I just did not realize these kind of companies were still in existence and preying on young people.  Thank you, b(6)."

94.    No later than August 4, 2014, Vemma was on notice of the following complaint on the FTC website: "This woman/company defrauded my elderly senile 80 year old father for over $8000 with her scam pyramid scheme.  In the matter of just a few days, she involved 4 entities to charge his card up over $8000 by convincing him to buy into some 'Miracle' healthy drink that would supposedly fix all his medical problems.  I need help to get his money back!!!"

95.    No later than August 4, 2014, Vemma was on notice of the following complaint on the FTC website: "Vemmma solicits people for money and promisese financial freedom.  Their pyramid scheme is somehow able to bypass FTC regulations or they have found some legal loophole to allow them to exist.  They continually scam thousands of people, mainly young naive high school students and mislead them into automatic inventory loading and recruiting.  There business model is a masked pyramid scheme plain and simple. By using their direct sales techniques there's a risk transfer taking place from the corporation to the individual distributor. This is fine when the

distributor has better information than corporate, like franchises, but vemma's business model lacks that component altogether. They offload their risk to to distributors using highly skewed illegal incentives. Furthermore, they substantiate most of their claims through false celebrity endorsements and partake in plain advertising fraud.  Vemma uses its auto-delivery (requirement of products to be automatically purchased by their distributors) as their primary revenue source. Their 'product sales' are not true 'consumer product sales' ...they are simply forcing their own distributors to buy an arbitrary amount of product each month to 'qualify' getting paid by Vemma.  This is a process commonly referred to as "frontloading".Here are a few other indisputable, undeniable facts about Vemma:- BK Boreyko changed his name from 'Benson Boreyko' so that Google search engines wouldn't turn up the fact that he lied to parents about being able to cure their children's ADHD. He lied about it repeatedly even though there is documented proof he did this.- Vemma's exorbitant pricing is not a reflection of its quality- Vemma affiliates have lied multiple times about their income or current paid rank. BK Boreyko has full knowledge of this (he can verify his elites' incomes if he wants to) yet still brings them on webinars, training calls and allows them to represent the company.- BK Boreyko wrote a letter in 2006 to the FTC asking them not to make MLMs verify and make public their customer base. Whether or not an MLM has a majority customer base is the ONLY WAY they distinguish themselves from being a pyramid schemes. Yet BK Boreyko (and the DSA) actively fight any attempt to have their customer base be analyzed or available to the public (circumstantial evidence says it doesn't exist).- Well over 90% of Vemma affiliates will (it has remained consistent for the past few years) make less than minimum wage. The income is even less considering that Vemma affiliates are forced to purchase a set amount of product ever month for no good reason other than to generate commissions for the top of the pyramid.In short, a pyramid scheme is a scam in which the vast majority of income comes from recruitment. That is all. It doesn't matter if a company- has a product- has notable sponsors- hasn't been shut down yet All it has to do is draw

the majority of its income from recruitment and it operates as a pyramid scheme, which is illegal in the United States because it is inherently deceptive and unsustainable by its very nature.   I ask the FTC to please do something to protect the public by initiating a thorough investigation into Vemma's illegal existence."

96.    No later than August 4, 2014, Vemma was on notice of the following complaint on the FTC website: "I was approached by friends who I've known since middle school. They told me they wanted to talk about a business opportunity, and told me I would be perfect for the business. They told me about Vemma, the process and the rewards and so on. After politely telling them know they preceded to belittle me. Tell me that attending college was a waste of time and that I was 'doing nothing with your life'. All members of Vemma proceeded to block me on social media sites. While I feel that Vemma has negatively affected social aspects of my life I feel it is necessary to file a complaint on the grounds that the business did not approach me about the product itself. Instead, the calls and personally meetings I had attended were about buying into the business itself. The meetings did not aim to promote me, as a consumer, to drink vemma products but to pay for a 'builders kit' to become a 'brand partner' to sell the drink as well, which makes it mandatory to buy arbitrary amounts of Vemma product a month. I request that the 70-30 rule be applied in the investigation of Vemma and that Vemma be acknowledged as a pyramid scheme."

97.    No later than August 4, 2014, Vemma was on notice of the following complaint on the FTC website: "MAIL: The consumer's anonymous complaint was forwarded to us by the U.S. Securities and Exchange Commission.  They claim that Vemma Nutrition Company is a pyramid scheme that scams thousands of people into automatic inventory loading and recruiting and should be shut down."

98.    No later than August 4, 2014, Vemma was on notice of the following complaint on the FTC website: "My college age son joined Vemma a month ago and it appears to be a pyramid scheme.  He will receive monthly shipments of the product

whether he sells it or not.  He is encouraged to get his investment back by recruiting others to join.  It cost $500 to join and the shipments are $160 every month.  He hasn't made any money yet; no customers have bought the product and he has no recruits either. When I suggested stopping the monthly shipments until he sells what he has, he says he can't do that because then he wouldn't be able to recruit others.  This company preys on young adults who do not have the life experience to discern the possibility of a scam; they hold meetings where they tell them what they want to hear to get them to join.  He is under the impression that he will soon be making large amounts of money while attending college full-time.  Has this company ever been investigated?"

99.    No later than August 4, 2014, Vemma was on notice of the following complaint on the FTC website: "The FTC brought a complaint against New Vision International, Benson K. Boreyko, and others. Docket No. C-3856 dated 3 March 1999. These individuals have moved their operations to Boca Raton, FL and are operating under the name Vemma Nutrition. They are selling an energy drink by recruiting college students, taking money from them under false hopes which in some cases includes student loan proceeds. It is a typical &quot;pyrimid skeem&quot; which they are calling &quot;multi level marketing aka mlm.&quot; The process works as follws: they recruit a college student and claim that they can make 100,000's of dollars and have a cash flow for life if they join the group (like family.) The cost to the student is $500.00 down and $150 per month. The student is then expected to recruit other friends and students with the promise that they will get a percent of all moneys brought in by their recruits who in turn are promised the same thing. The product is an energy drink with vitamins. They claim however that it will reduce blood pressure, prevent turmors etc. All of of this is done via telephone and texting not on their web site. Your order resolving the case mentioned above resulted in a ban from this activity for 20 years. They just moved to Florida and changed the product name. Other-Other Update."

100.   No later than August 4, 2014, Vemma was on notice of the following complaint on the FTC website: "MAIL: Consumer's letter was forwarded by the U.S. Securities and Exchange Commission. Consumer states that Vemma Nutrition Company fits the description of a pyramid scheme. Consumer states that they recruit people into the group and not sell the product."

101.   No later than August 4, 2014, Vemma was on notice of the following complaint on the FTC website: "It seems that Vemma is getting more active in Switzerland (and Europe in general) since last year. A couple of People I know have become brand partners, so I've looked into their promises. In my opinion Vemma is clearly a pyramid scheme (looks pretty much the same as Herbalife) and can not work out for 99% of the people who join. I'm pretty sure that they are not able to make 70% through retail sales, which would make them Illegal in the U.S.A. or Canada. As the Headquarters of Vemma lies within your jurisdiction, I'm sending this complaint to you. I know that the FTC is currently investigating Herbalife, so I would urge you to also take a closer look at Vemma. Thank you very much and best regards!"

102.   No later than August 4, 2014, Vemma was on notice of the following complaint on the FTC website: "I have been, over the course of a year, been solicited the company &quot;Vemma.&quot; I say company because, although they have a tangible product, what was being sold was the integration into their  business as a &quot;brand partner.&quot; It was explained to me that in order to get into the company I would have to first invest five hundred dollars of my own money, at which point my the primary method for me to make money would be to recruit others who would also be paying this five hundred dollars. On top of that it was made clear to me that a residual monthly expense of 160 dollars worth of product would be billed to me, assuring that my residual income would be secured if this was paid. I would like to complain about Vemma, which is very clearly a pyramid scheme, and by the definition of the FTC which requires a certain percentage of a customer base in order to be sustainable, it falls short of this mark.

Unfortunately I do not have privileged access to those type of statistics, but the model alone insinuates revenues come from the distributors involved and not by sale of the actual product.I am a business student studying at the University of New Haven, Connecticut. I pride myself that I am being educated on the fundamental of business practice by people who are veterans of the field. Every day I am forced to witness Freshman (especially those in the College of Business) being conned into this scheme. Therefore, on top of the fact that this is an illegal business practice, I am also asserting that the business is the poisoning the minds of the promising youth of our country and that steps should be taken to remedy this.Vemma, unlike companies similar to it, glamorizes their company in such a way that it attracts a particular demographic who are promised success in return for their loyalty. I am convinced it is their passion which fuels this scam. Other-Other Update."

103.   No later than August 4, 2014, Vemma was on notice of the following complaint on the FTC website: "Consumer states that he is aware Vemman is a Pyramid scam. Consumer states that this company use to be New Vision Internation. He wanted to file a compalint due to it seems as this company is scamming the Students."

104.   No later than August 4, 2014, Vemma was on notice of the following complaint on the FTC website: "Consumer states that a company called Vemma that sells energy drinks and the company recruits people to buy products from the company website only and customer's have to pay a $250 enrollment fee. Consumer heard about the company through his minor son. The caller states that current customers, usually minor aged, bring in other customer's to purchase the products. Caller states that the customer's usually will use their parents credit cards to make the purchases from the website without the parents knowledge. Caller states that the company holds private meetings for the minor aged customers in his area. The caller states that the company uses the ruse of claiming that the customer's earn money by bringing in new customers

which is basically a pyramid scheme. Caller states that the minor aged customers do not make any money."

105.   No later than August 4, 2014, Vemma was on notice of the following complaint on the FTC website: "This company has made a huge and sudden impact on my generation. It has exploded through social media, mostly promoting for people to join in the marketing campaign. With a little research it becomes evident that this is a typical pyramid scheme, convincing people to buy inventory of the product and then recruit others to sell beneath them, keeping some of the profits. In this way, the top of the line is making much more money simply by recruiting more people to buy the required inventory than actually by selling the product. The second problem that I see with this product are the false health claims made by the representatives of the company to improve immune function, cure high cholesterol, and relieve inflammation and pain. The company also boasts about clinical studies performed, and upon reading these studies I can easily tell that they are not nearly up to par with any study worthy of publishing in American Journals. The claims are not supported by the studies and the product is not available in stores, leading me to believe that the company is simply trying to get as much money as possible out of the representatives that have bought in to the promise of six-figure earning and a Mercedes as a bonus. I am hoping that something can be done before too many people put their savings on the line just to make money for a few people at the top of the pyramid, all while possibly placing the lives of other consumers in danger by disseminating misleading information."

106.   No later than August 4, 2014, Vemma was on notice of the following complaint on the FTC website: "ive been contacted by sevwral representatives of vemma. i attended a meeting where everybody is so pumped up and excited and this opportunity is made out to seem as if it will be life changing. the person in charge of the meetinf and according to everybody he is at the higheat level and qualifies for a mercedes benz ans makes 6 figures a year was only 16. so after they sell you this story they tell you that

investing these $500 and reffering people you can can have it all. personally it sounds like a pyramid. the sad thing is that tjey prey on college students and recent collegw grads."

107.    No later than August 4, 2014, Vemma was on notice of the following complaint on the FTC website: "  Hello, My name is b(6) and I am not, and never will be, an active member of the fraudulent, brainwashing company called Vemma. I'm an informed college freshman at the University of Indianapolis, and I have literally watched some of my friends get sucked in by this company. From what I have researched, everything about Vemma represents an illegal pyramid scheme. Yes, they sell product, but the consumers are prodded to recruit new members over selling the product. These kids go as far as traveling to Chicago to run demonstrations and get more people to sign up so they can make money. It's ALL about how many people you recruit. They have these guys drive around nice cars and give these presentations telling these naive teenagers that they are going to reach 'financial freedom' if they just buy this product and recruit more members. Over 75% make less $1,400 in a year. A minimum wage job, worked at just 20 hrs/week will make $8,000 in a year. The number of people that make any type of substantial money from this is less than 1%. This company has brainwashed these kids into thinking they are literally 'changing the world and making lives better' by recruiting new members. They connect these quotes about success and making lives better to this company, and it's a shame. Anyone who objects to the system 'needs to be better informed' about it. It's sickening, and it's a travesty. I truly hope that you will do everything in your power to shut this company down. Benson 'BK' Boreyko is a fraud, and he is raking in money from teenagers through this pyramid scheme. I cannot bear to watch these kids think they are quickly on the way to mansion, yachts, and fancy cars. 99.8% of people lose their investment amount. Again, this company makes it very clear that your main goal is to recruit new members - they offer more compensation for recruiting members. They promise this road to financial freedom, but kids are losing

more money. They make you pay $180 a month to stay in the program, and they make new recruits buy a $500 starter pack. In short, if the consumer fails, Vemma has made their money off of them. If the consumer breaks even, Vemma has made money off of them. If the consumer makes money, Vemma has made money off of them. It's incredible that no national spotlight has been shined on this company. They are convincing kids into thinking that the way to change the world is to join Vemma. It's awful and it needs to be stopped. Thank you for your time. I look forward to seeing some sort of action being taken. A very angry consumer, b(6)."

108.   No later than August 4, 2014, Vemma was on notice of the following complaint on the FTC website: "I discovered this company (vemma) when my nephew was recruited as a distributor and tried to recruit my son into the scheme late last year. I researched the company and believe it is an illegal pyramid scheme. While vemma does have products, the products are not competitively priced with its peers and are mainly sold to distributors with little or no sales to people outside of the business. The distributor is required to purchase products through a monthly auto-ship program in order to qualify to be paid by the company. The company targets high school and college kids, luring them in with visions of lots of cash (up to $100k/month!), a life of residual income, retiring their parents, driving fancy cars, and travelling the world. I have watched several of the vemma reps' presentations and there is very little mention of retail product sales but heavy emphasis on recruitment. Whenever the product is mentioned, it is touted as being some clinically tested wonder drink responsible for preventing leukemia and diabetes (while stating the competition energy drinks (eg redbull) cause cancer). Like many MLM companies, the vast majority of vemma's distributors make little or no money as per vemma's own payment disclosure, however there is a constant barrage of exotic cars, world travel, and a life of leisure after &quot;grinding&quot; the business. The concept that it is the distributor's own work ethic that will determine success or failure is also presented and there is no disclosure of the actual percentage of distributors

that make even a minimum wage equivalent. There is also a car lease bonus program, enticing these kids and young adults with the vision of driving an expensive BMW, Mercedes, or even a Lamborghini. Fortunately, my son was able to see this scheme for what it actually is and did not join. My nephew, however, is convinced he will be in that &lt;1% to get into a 6 figure and above income level. My son and nephew are both students at Marshall University and apparently vemma is spreading like a virus on campus. I am afraid that there will be several students abandon college based on the false hopes and dreams of this scheme. I believe that vemma qualifies as an illegal pyramid scheme and ask that the FTC look into vemma's and its distributors' business practices. Thank you for your attention to this matter. Sincerely, b(6) Other-Other Update."

109. No later than August 4, 2014, Vemma was on notice of the following complaint on the FTC website: "My name is b(6). My 17 year old daughter has become involved with what I consider a pyramid scheme. The company is Vemma, which from my googling the name came across many articles about complaints to the FTC and BBB. I contacted my local Ag's office. They refered me to the department of business regulation who in turn gave me 3 options of which one was to contact the Ag's office. Why am I not surprised I got the run around. I attended a meeting a few weeks ago with my daughter. Their own rules due to a settlement prohibits 17 and below from becoming involved with the company but yet my daughter was allowed to become involved. The main emphasis of the plan is to recruit more people. You cannot sell the product and make money you have to recruit and spend $150.00 monthly to qualify for any payment. They also push a $500.00 one time investment to qualify for everything they offer. That is what they recommend to everyone. I asked 3 people how they make the majority of their money. By selling the drink or recruiting. All 3 dodged the question and never answered my question. Speakers boldly telling possible recruits you think you can't afford $500.00 sell what ever you have to to raise the $500,00. It's a drop in the bucket compared to the return you will get back in a short amount of time. They were making

health claims that it lowers cholesterol. One speaker said a family member lowered their cholesterol 40 points just by drinking the verve drink. They also tout $50,000 BMW as a bonus when you get to a certain level. One speaker showed the keys to the BMW that he qualified for. After googling Vemma. I came across more than a few blogs and you tube videos that stated that you actually lease the BMW and you get bonuses to pay towards the lease. Making outrageous income claims of thousands a month in a few months. No proof to back up these claims. Just words and fast talk speaking. They are specifically targeting teens and college students calling it the YPR ( young peoples revolution ). One of the speakers claims a person he knows dropped out of the last year of college to go full time with Vemma. I cannot get through to my daughter what a scam this is. She works a part time job and it took her 6 months to save $900.00 she was saving for a car. Someone invited her to one of the Vemma meetings and now she is hooked and $150.00 into this scam. I'm really worried that she is going to end up with the monthly commitment of $150.00. She is mad at me for not supporting her. Can't do that when I know where this is going to end up. It really angers me that they get away with this crap. I'm losing sleep over this. She's going to lose all her money. I can't convince her of that. Why are these people constantly getting away with this?"

110.    No later than August 4, 2014, Vemma was on notice of the following complaint on the FTC website: "On Dec. 26, 2013 I was recruited into the Vemma Nutrition Company through a third party VemmaBuilder. b(6) my enroller who I never heard from after he convinced me to join this Multi Level Marketing Scam for $19.95/mo. plus the cost of some very expensive products. I was convinced to purchase the most expensive but supposedly the best one for $80.00/mo. and my wife was convinced to purchase the weight loss products two boxes with 16 servings and a shaker bottle for $112.00. The Bode-e Rest for nighttime tastes like urine and the Bode-e Burn have not helped at all. We spent well over $1,431.13 from Dec-Mar. were discriminated upon by their inadequate and false advertising of their product and business opportunity.

My number one complaint. Now in March I decided that the $19.95 I was paying them to help me build my business with more recruits which they said they would take care of by recruiting 80% of members placed in my Success Line. Yes they placed over 3000 people in my ACCT none under my Success Line where I would get paid for the sales. After 3 months we decided the $19.95 a month was a waste of money we didn't get any payment for the recruits and the products we bought. I called Home Office and explained that VemmaBuilder was not holding up to their claim of making some money within a couple of months with their $19.95/mo. system. The Rep. informed me to resign from VemmaBuilder which she did right on the phone with me and then instructed me to go to the Company Website and open another account without the third party. That was March 19, 2014 on March 21, 2014 I opened another account and asked the people I enrolled to do the same so they would continue to be in my MLM. One of my recruits didn't close his account and just opened another one so that gave him two active ACCT'S, then there were several other members one with four accounts, and three more with two active accounts each! I called to inform them of this the Rep. terminated me after having bought $1400+ of products --- Additional Comments: I would like to be reimbursed for all the products that we bought $1431.13 plus $13,568.87 for a total of $15,000.00 which is the amount I could have made in a one month period if I would have had the opportunity which they Discriminately and Unjustly took away from me while at the same time allowing other people to keep their accounts even though they had two active accounts and I only had one active account and one that they had me resign from this was not my doing as they are implying."

111.    No later than August 4, 2014, Vemma was on notice of the following complaint on the FTC website: "I had signed up for the vemma business under the impression that this was a legitimate business. I had to purchase product at $85.36 in order to get involved, once involved I realized that the company was asking for more and more money and was not only not a legitimate business but a pyramid scheme. I then sent

an e-mail asking that they remove me from the call list that I was no longer interested and since then they have continued to pull funds from my account that I have not agreed to. Now they are telling me that I must pay $39.95 more for the product or return it, and an additional $29.95. I am not sure what they are saying that is for. --- Additional Comments: I would like to have my funds returned to me, but more importantly I want to make sure that they can not take any more out of my account. What they are doing now is stealing from me and I don't appreciate it."

112.   No later than August 4, 2014, Vemma was on notice of the following complaint on the FTC website: "A friend asked me to join the Vemma meetings at the collage (MSU) and he mention this would be a great was to make money on the side. I attended 2-3 meetings before I agreed to sign up as a 'Business Partner'. which means Vemma takes over $500.00 for the starter package. Vemma is a company that sells energy drinks, weight loss drinks and shakes and Anti-oxident drinks. In the meetings, it is said that all the drinks have a high volume of vitamins and other natural herbs to care for the free radicals within the body. Along with other herbs to maximize the vitamins. I was in class and my Professor stated that his wife needs more iron and vitamin B's for her to get treated for Chemo. I brought him and his wife samples of the Anti-oxidant shots and the free sugar vemma that has all the vitamins in each drink.   After class the fallowing week, My Professor handed me a pile of papers from Etablishment Inspector Report, United States of America Federal Trade Commission, ect.. I asked how he got all the papers and he stated that his wife has worked for the pharmaceutical company checking the medicine for over 30 years and in fact she did the research.  I read all the fine prints and was shocked to read that Vemma has been known to have allergic reactions, hospitalization, swelling of the joints and even high amount of lead in each drink and a pyramid scam, plus more.  I called my friends that I have given these product to and asked them to throw it away. These drinks may cause cancer and not to drink any of it.  b(6) I got in time ( heart surgery), but b(6) drank the full care with his associates

and costumers. (I gave b(6) a case for he welcome open business).  I called Vemma and asked why no one knows about the lead in the drinks? I also stated that I want my money back and she said she would give me a label to get he product there with no charge and I only get money for what I have. I explained to her that I was giving these drinks to promote Vemma and many student are unaware of the truth --- Additional Comments: I have proof of the money Vemma has taken from my account and want all of it back, I have only been associated with this company from 1-13-14 /2-23-14.  A shade over 30 days.   01-13-14  $530.95  02-11-14  $150.90  02-13-14  $79.95 I have a statement that proves Vemma took $150. and two days later I ordered $79.95 for a friend with his welcome open business.  If I would of known the full truth about what contains within the drinks, I would have stayed clear away from it from the star."

113.    No later than August 4, 2014, Vemma was on notice of the following complaint on the FTC website: "Why are these for sale on Amazon at 1/2 price? Are college students being taken advantage of?Michelle CelarierApril 3, 2014 | NYPOSTVerve energy drink company tries to stay off regulators' radarVemma, the high-flying company behind Verve energy drinks, wants to stay off regulators' radar.Founder &amp; CEO Benson K. Boreyko said the nine-year-old multilevel marketing company is changing its business practices to get ahead of any possible fallout from the Federal Trade Commission's investigation into Herbalife, which has a similar business model. 'I always want to stay on the good side of the FTC because they have guns,' Boreyko told The Post.Vemma, which recruits students to sell its caffeine-fueled drinks on college campuses, will no longer require salespeople to make minimum monthly product purchases of $150 to qualify for commissions. The company will also end sign-up fees. The changes, which went into effect on April 1, set Vemma apart from many MLMs, including Herbalife, which requires distributors &amp; their sales recruits to make minimum product purchases of more than $2,000 to qualify for royalties. Even those uninterested in recruiting have to buy an introductory 'member pack' &amp; pay an

annual membership fee after the first year. Critics of multilevel marketing companies contend that these out-of-pocket expenses can quickly add up and that most salespeople end up losing money. But they are lucrative for the companies. Boreyko acknowledges that the changes at Vemma, with revenues last year of about $200 million, could hurt sales initially. 'But why not clean up now before I hit a billion dollars and get bulletproof so when the regulators hear your name, they'll say, "This is the way it should be done,"' Boreyko said. Herbalife is under attack from activist investor Bill Ackman, who claims it is a pyramid scheme in which salespeople make more money recruiting new sales agents than selling products to consumers.Last month, the Los Angeles-based nutritional products company disclosed that the FTC had opened an investigation, but has vehemently denied it is a pyramid scheme. The Vemma changes highlight some lingering issues for MLMs, which remain controversial years after the FTC's probe of Amway set guidelines for the industry, experts said. 'In cases where MLMs have been found to be pyramid schemes, the money brought in by recruitment in form of fees and product purchases have been the mechanisms that have allowed the pyramids to exist,' said MLM expert William Keep, dean of the School of Business at The College of New Jersey. Even some industry insiders think product purchase requirements have to go. 'It would fix a lot of issues,' MLM lawyer Kevin Thompson suggested on a conference call last month with Barclays analyst Meredith Alder. 'What happens is a lot of people buy stuff they never would buy in quantities, they would never have purchased just to qualify for bonuses.' Thompson admitted the change could make it difficult for some MLM companies to survive. Although Boreyko said he doesn't want to throw 'the [MLM] industry under the bus,' he now considers his company an 'affiliate marketer' focused on customer sales, with e-commerce Web sites, free back office support and free mobile apps.' We want to be more like Amazon than Amway,' he said. 'You've never heard anyone call Amazon a pyramid scheme.' FILED UNDERBILL ACKMAN, ENERGY DRINKS, FTC Other-Other Update."

114.   No later than August 4, 2014, Vemma was on notice of the following complaint on the FTC website: "I was first introduced to Vemma through a high school friend of mine named b(6). He had messaged me on facebook about this 'really profitable opportunity.' He would not tell me about what this was until I was in a room with him. So he invited me to his house for a barbecue where he explained to me what this Vemma was. At first I was very skeptical of investing my money into this business. So I went home and spent two months researching this company. Communications were lost with b(6) during that two month time period. It was in August where I decided that I wanted to get involved with this. I had reached out to b(6) to get involved. To get involved, one must pay 568 dollars and 12 cents. While I was researching about the company, the idea of a car kept coming up. For someone to be qualified to be an associate of Vemma and to receive a car and full benefits, he or she must pay 1136.24 to be qualified. Therefore that individual has to buy one thousand dollars worth of product in two months. Something that is not mentioned is that each month 568 dollars will be deducted out of your bank account for the autodeliverly. It was on August 17th when I placed my first order for Vemma. Once the order was placed, the only way I would get my money back is by recruiting other individuals and having them sign up for Vemma. I would get points for every person that I recruited which would build on the money I would earn. After a couple days into this company I realized that this was a multilevel scheme. I contacted the company and was able to receive a full refund on my product. I had lost the money for taxes and shipping which would be around two hundred dollars. Vemma is targeting young adults because they are vulnerable and easily fooled. Young adults love making money and energy drinks, so this is an easy way to make money on this population. I want to file this complaint because I cannot see another child be taken advantage of by this company. This is a pure and simple multilevel marketing scheme that needs to be taken down."

115.   No later than August 4, 2014, Vemma was on notice of the following complaint on the FTC website: "My first encounter with Vemma was on June 22nd at 6:26 pm. I was messaged on facebook by an old high school friend named b(6). During the conversation, their was no mention of Vemma. Instead he had asked me if I was interested in a 'really profitable oppurtunity.' How it works is that the brand partner (someone who pad the 1126.24 to get involved) invites you to a home event to inform you of the company. The individuals at this part belittle for not being involved. These individuals will then go on to explain what Vemma is and how it is 'NOT A PYRAMID SCHEME.' I attended the event and was very skeptical on what I haerd. That evening I went hom and began researching what Vemma is. I started a new job and forgot all about this. It wasn't until August when I decided that I would give Vemma a shot. Communication between b(6) and I were lost so I had to find a new brand partner to sign me up. I found ?b(6) to be my guy. It was under him whom I had siged up to become a brand partner of Vemma. To become a brand parnter one must be ove the age of 18 and purchase 1126.24 dollars worth of useless energy drinks. That is two purchase of 563.12. While I was at the parties, I was promised a car for signing up as well as my money. No car wa given to me when I signed up and neither was my money. It was after I signed up that I was told that I had to recruit twelve indiviudlas for my money to be earned back. The only way to get the car is by having two purchase cycles. When I signed up I was not informed that 563.12 would be deducted from my back account each month. Luckily I had signed up for Vemma during the first week of my Freshman year at college. I had told one of my professors about this and he had infomed me that I had just gotten myslef into a multi-level marketing scheme. It was at that moment when I had contacted the company for a full refund. I was lucky to fall between the 30 day return policy. I returned my product and was able to recieve a full refund minus the two hundread spent on shipping and taxes. My intentions for this complaint is to have Vemma shut down for running a multi level marketing company. As a future teacher, it hurts me to see

individuals lose money to schemes like these. Even though I was fortunte to get my money back, many are not. Vemma needs to be stopped!!!   Update 05/08/2014, Consumer was calling to ask our role as the FTC.Bmiera."

116.   No later than August 4, 2014, Vemma was on notice of the following complaint on the FTC website: "I have invested several thousand dollars with this company over the past year. I have filled a complain and fraud alert discussing the actions of this company. They are operating an elaborate pyramid scheme, and the 'affiliates' that represent the company claim many things that are not true. Should I recieve this settlement I will not proceed further into taking legal action with my Attorney. --- Additional Comments: I seek full reimbursement for all items purchased from this company, to the tune of $2500. This is a rough estimate as I can not calculate the total of all orders placed with Vemma since they will not allow me to access this information due to me not ordering $60 or more of their products in the past month."

117.   Many (or all) of the Consumer Complaints set forth above in this Declaratory Judgment Complaint constitutes a "Claim" under the Policies issued by Hanover during the terms of the 2012-13 Policy Period (from August 1, 2012 to August 1, 2013), the 2013-14 Policy Period (from August 1, 2013 to August 1, 2014), and the 2014-15 Policy Period (from August 1, 2014 to August 1, 2015).

### 2.   During the 2015-16 Policy Period: The FTC Lawsuit

118.   The Hanover 2015-16 Policy issued to Vemma was effective from August 1, 2015 through August 1, 2016.

119.   On August 17, 2015, the FTC filed the FTC Lawsuit against Defendants (and others) seeking monetary relief and also a Permanent Injunction for Defendants' alleged violation the FTC Act for its operation of a "pyramid scheme."

120.   Specifically, the FTC Lawsuit alleges that Vemma's "business model depends on recruiting individuals to participate in Vemma…and encouraging them to purchase Vemma Products…rather than selling products to ultimate-use consumers," and

that "Vemma's marketing efforts…targets young adults, including college students," and Vemma's "marketing materials prominently feature young, seemingly affluent individuals surrounded by conspicuous displays of wealth, such as luxury vehicles, jets, and yachts."

121.    A true and correct copy of the FTC Lawsuit is attached hereto as Exhibit 23 and incorporated herein by reference (captioned *Federal Trade Commission v. Vemma Nutrition Company, et al.*, case no. CV-15-01578-PHX-JJT, filed before the United States District Court for the District of Arizona).

122.    On September 18, 2015, after an evidentiary hearing, the Arizona District Court granted a Preliminary Injunction against the Defendants, finding: (i) "[t]he evidence before the Court leaves little doubt that the FTC will ultimately succeed on the merits in demonstrating that Vemma is operating a pyramid scheme"; and (ii) that the FTC has a "likelihood of success on the merits in demonstrating Vemma and Mr. Boreyko are operating a pyramid scheme."   *See*, the FTC Lawsuit, 2:15-cv-01578-JJT, Doc. 118, p. 6, 8.

**C.    Vemma Provides Notice of the FTC Lawsuit to Hanover**

123.    During the August 1, 2015-16 Policy Period, on or about October 5, 2015, Vemma provided notice to Hanover of the FTC Lawsuit, which was filed on August 17, 2015.

124.    Pursuant to the 2015-16 Policy, Section II of the 2015-16 Policy (Common Policy Terms & Conditions) defines what constitutes "Related Claims":

> Related Claims means all Claims based upon, arising from or in any way related to the same facts, circumstances, situations, transactions, results, damage or events or the same series of facts, circumstances, situations, transactions, results, damage or events.

125.    Under Section VI of the 2015-16 Policy (Common Policy Terms & Conditions), it provides:

> **RELATED CLAIMS**
>
> With respect to the Liability Coverage Parts <u>all Related Claims will be considered as a single Claim made in the Policy Period … in which the earliest of such Related Claims was first made</u>… pursuant to the applicable Coverage Part. All Related Claims are subject to the Limits of Liability, Retention and other terms and conditions applicable to the earliest Related Claim. (Emphasis added.)

126.    Unbeknownst to Hanover, during the 2011-12 Policy, the 2012-13 Policy, the 2013-14 Policy, and the 2014-15 Policy: (i) the Arizona Pyramid Arbitration was commenced alleging that Vemma violated the Arizona Pyramid Scheme Act (44 A.R.S. §1733, *et seq.*) among other statutes; (ii) the Oregon DOJ Claim was commenced against Vemma alleging it is a "pyramid scheme"; (iii) more than 100 Consumer Complaints were filed against Vemma, more than three dozen of which alleged Vemma was a "pyramid scheme"; and (iv) the Italian regulators commenced the Italian Proceeding against Vemma for its alleged operation of a pyramid scheme in Italy, through its sale of dietary supplements, in violation of the Italian Consumer Code.

127.    On March 10, 2014, Vemma's sale of dietary supplements was found to be an illegal pyramid scheme in violation of Italian laws, and a fine and judgment were entered against Vemma.

128.    Because the FTC Lawsuit, the Arizona Pyramid Arbitration, the Oregon DOJ Claim, the Consumer Complaints, and the Italian Proceeding are all "based upon, arising from or in any way related to the same facts, circumstances, situations, transactions, results, damage or events or the same series of facts, circumstances,

situations, transactions, results, damage or events," they constitute "Related Claims" under the Policy.

129.    Pursuant to Section VI of the Policy, "all Related Claims will be considered as a single Claim made in the Policy Period … in which the earliest of such Related Claims was first made" – *i.e.*, during the 2011-12 Policy, when the Arizona Pyramid Arbitration was first filed and noticed to Defendants.

## COUNT I

### Not a "Claim First Made" During 2015-16 Policy Period

130.    Hanover incorporates and restates each and every allegation set forth in preceding paragraphs of this Complaint as if alleged in this Paragraph.

131.    Pursuant to the applicable insuring agreements in the Hanover 2015-16 Policy, coverage is only available to Defendants for any "**Claim** first made" against them during the 2015-16 Policy Period.

132.    Although the FTC Lawsuit was filed during the Hanover 2015-16 Policy Period, the Policy provides "all **Related Claims** will be considered as a single **Claim** made in the **Policy Period**…in which the earliest of such **Related Claims** was first made."

133.    During the Hanover 2011-12 Policy Period, the 2012-13 Policy Period, the 2013-14 Policy Period, and the 2014-15 Policy Period, "Claims" were made against Defendants including: (i) the Arizona Pyramid Arbitration; (ii) the Oregon DOJ Claim alleging Vemma was a "pyramid scheme"; (iii) more than 100 Consumer Complaints, of which more than three dozen alleged Vemma was a "pyramid" scheme; and (iv) the Italian Proceeding was commenced and found Vemma's sale of dietary supplement was an illegal pyramid scheme in violation of Italian laws, and a fine and judgment were entered against Vemma

134.     Because the pyramid-scheme and other allegations of the FTC Lawsuit (filed during the 2015-16 Policy Period) are the same as the pyramid-scheme and other allegations of the "**Claims**" made during the 2011-12 Policy Period; the 2012-13 Policy Period, the 2013-14 Policy Period, and the 2014-15 Policy Period (*i.e.*, the Arizona Pyramid Arbitration, the Oregon DOJ Claim, the Consumer Claims, and the Italian Proceeding), the Policy provides all "related" Claims constitute "a single **Claim**" and "made in the **Policy Period**…in which the earliest of such **Related Claims** was first made" – *i.e.*, during the 2011-12 Policy Period.

135.     Although the FTC Lawsuit was filed during the 2015-16 Policy Period, the other "Related Claims" made against Defendants were first made against Defendants prior to the 2015-16 Policy Period and, therefore, the FTC Lawsuit was not a claim that was first made during the 2015-16 policy period, precluding coverage for the FTC Lawsuit (and the other "Related Claims) under the insuring agreements contained in the 2015-16 Policy.

<div align="center">

**COUNT II**
**Late Notice**

</div>

136.     Hanover incorporates and restates each and every allegation set forth in preceding paragraphs of this Complaint as if alleged in this Paragraph.

137.     Under the Notice Provision of the 2011-12 Hanover Policy (and alternatively under the 2012-13, 2013-14, and 2014-15 Policies), Vemma was required to provide to Hanover "written notice of the 'Claim'…as soon as practicable <u>during the 'Policy Period'</u>…<u>but in no event later than 90 days after such 'Claim' is first made</u>." (Emphasis added.)

138.     Vemma never provided notice to Hanover of the Arizona Pyramid Arbitration (and alternatively of the Oregon DOJ Claim, the Consumer Complaints, nor the Italian Proceeding) in compliance with the notice provision of the 2011-12 Policy

(and alternatively under the notice provisions of the 2012-13, 2013-14, and the 2014-15 Policies).

139.   Accordingly, these "Claims" are not afforded coverage under the 2011-12 Policy (and alternatively not afforded coverage under the 2012-13, 2013-14, and the 2014-15 Policies).

140.   Because the FTC Lawsuit is a "Related Claim" to these earlier Claims, Vemma's failure to provide notice of the original "Claim" (*i.e.*, the Arizona Pyramid Arbitration), and alternatively all of the other "Claims" (*i.e.*, the Oregon DOJ Claim, the Consumer Complaints, and the Italian Proceeding) means there is no coverage under the 2011-12 Policy (and alternatively under any of the Policies) for the FTC Lawsuit.

## COUNT III
## Unfair Business Practices Exclusion

141.   Hanover incorporates and restates each and every allegation set forth in preceding paragraphs of this Complaint as if alleged in this Paragraph.

142.   The Hanover 2011-12 Policy contains the Unfair Business Practices Exclusion, which provides:

> This insurance does not apply to "Loss" on account of any "Claim" made against any "Insured":
>
> R. Directly or indirectly based upon, arising out of, or attributable to anti-trust violations or **_unfair business practices_**, including but not limited to any actual or alleged price fixing, price discrimination, restraint of trade, **_unfair business practices_**, monopolistic practices or any actual or alleged violations of the Sherman Antitrust Act of 1890, the Clayton Act of 1914, and any amendments thereto, the Robinson Patman Act of 1938, the Federal Trade Commission Act of 1914 or any rules or regulations promulgated in connection with the statutes described above; or similar provision of any federal, state or local statutory law or common law. (Emphasis added.)

143.   The FTC Lawsuit constitutes a "Claim" made against "any 'Insured'" which is "[d]irectly or indirectly based upon, arising out of, or attributable to… <u>unfair business practices</u>, <u>including</u> but not limited to <u>any</u>…<u>alleged</u>…<u>unfair business practices</u>…". (Emphasis added.)

144.   Each and every substantive allegation against Defendants in the FTC Lawsuit is set forth under the heading, "**<u>DEFENDANTS' BUSINESS PRACTICES</u>**". (Emphasis in original.)  The FTC Lawsuit contains four causes of action, each stating that the acts or omissions alleged therein "constitute a deceptive act or practice" in violation of Section 5(a) of the FTC Act. Accordingly, based on the allegations of the FTC Lawsuit which set forth the Defendants' deceptive and unfair business practices, the Unfair Business Practices Exclusion applies to bar coverage under the Policy for the FTC Lawsuit.

145.   In addition, in the Italian Proceeding, which is a "Related Claim" to the FTC Lawsuit, the Italian Authority brought the proceeding against Vemma, alleging Vemma had committed "***<u>unfair business practices</u>*** in violation of Articles 20, 21…and 23,…of the Consumer Code…", and ultimately "the Authority found the <u>business practice</u> under examination <u>to be unfair</u> pursuant to Articles 20, 21,…and 23,…of the Consumer Code, on the basis of the following considerations: …any pyramid promotional scheme is deceitful."  Under the terms of the Policy, "all **Related Claims** will be considered as a single **Claim**," and because Vemma has been found liable for "any actual…unfair business practice" in the Italian Proceeding ("the Authority found the <u>business practice…to be unfair</u>"), there similarly is no coverage for the FTC Lawsuit based on the Unfair Business Practices Exclusion.

## COUNT IV

### <u>The Profit/Advantage Exclusion</u>

146.   Hanover incorporates and restates each and every allegation set forth in preceding paragraphs of this Complaint as if alleged in this Paragraph.

147. The Hanover 2011-12 Policy contains a Profit/Advantage Exclusion, which provides:

> This insurance does not apply to "Loss" on account of any "Claim" made against any "Insured":
>
> A. Directly or indirectly based upon, arising out of, or attributable to an "Insured" gaining <u>any profit</u>, remuneration <u>or advantage</u> to which such "Insured" was not legally entitled; or…
>
> However, Paragraphs A., B., and C. above shall not apply unless a <u>judgment</u> or other final adjudication <u>adverse to any of the "Insureds"</u> in such a "Claim" is obtained. (Emphasis added.)

148. As set forth above, the FTC Lawsuit and the Italian Proceeding each constitute "Related Claims" which, pursuant to the Policy, shall be deemed a "single Claim."   Because a "judgment" has been entered against Vemma in the Italian Proceeding, it has been established that Vemma was "gaining <u>any profit</u>, remuneration <u>or advantage</u> to which [Vemma] was not legally entitled," and the Profit/Advantage Exclusion applies to exclude coverage for the FTC Lawsuit.

## COUNT V
## <u>The Dishonesty/Fraud Exclusion</u>

149. Hanover incorporates and restates each and every allegation set forth in preceding paragraphs of this Complaint as if alleged in this Paragraph.

150. The Hanover 2011-12 Policy contains a Dishonesty/Fraud Exclusion, which provides:

> This insurance does not apply to "Loss" on account of any "Claim" made against any "Insured":
>
> B. Directly or indirectly based upon, arising out of, or attributable to any <u>dishonest or fraudulent act</u> or omission,

any criminal act or omission or any willful violation of any statute or regulation by such "Insured";…

However, Paragraphs A., B., and C. above shall not apply unless a <u>judgment</u> or other final adjudication <u>adverse to any of the "Insureds"</u> in such a "Claim" is obtained. (Emphasis added.)

151.   As set forth above, the FTC Lawsuit and the Italian Proceeding each constitute "Related Claims" which, pursuant to the Policy, shall be deemed a "single Claim."   Because a "judgment" has been entered against Vemma in the Italian Proceeding, it has been established that Vemma committed a "dishonest or fraudulent act or omission."   Indeed, in entering the Preliminary Injunction against Vemma, the District Court quoted the Ninth Circuit's *Omnitrition* decision (79 F.3d at 781) that, "[p]yramid schemes are said to be inherently fraudulent because they must eventually collapse."   Accordingly, the Dishonesty/Fraud Exclusion applies to exclude coverage for the FTC Lawsuit.

## COUNT VI
## <u>Alternatively, Known Claim Exclusion</u>

152.   Hanover incorporates and restates each and every allegation set forth in preceding paragraphs of this Complaint as if alleged in this Paragraph.

153.   Pleading solely in the alternative, for the 2015-16 Policy Application, Vemma submitted to Hanover a Policy Application in which Vemma was asked:

Is any Insured proposed for coverage aware of any fact, circumstance, situation that might reasonably be expected to result in a Claim that would within the scope of the proposed Liability Coverage Parts?

154.   The 2015-16 Policy further provides a Known Claim Exclusion as to any misrepresentation in the 2015-16 Policy Application:

B. If the Application contains any misrepresentations made with the intent to deceive or contains misrepresentations which materially affect the acceptance of the risk or the hazard assumed by the Insurer under this Policy, then no coverage shall be afforded for any Claim based upon, arising from, or in consequence, of any such misrepresentation with respect to:

1.   Any   Insured   Individual   who   knew   of   such misrepresentations (whether or not such individual knew such Application contained such misrepresentations) or any Insured Entity to the extent it indemnifies any such Insured Individual; or

2. Any Insured Entity if any past or present chief executive officer, chief financial officer or chief information officer (or any equivalent position) of the Insured Entity knew of such misrepresentation (whether or not such individual knew such Application contained such misrepresentations).

155.   At the time the 2015-16 Policy Application was submitted, the Defendants were "aware of any fact, circumstance, situation that might reasonably be expected to result in a Claim that would within the scope of the proposed Liability Coverage Parts," but Defendants failed to disclose the same to Hanover.  Specifically, Defendants knew that Vemma was a pyramid scheme, knew of the Arizona Pyramid Arbitration, more than 100 Consumer Complaints (including an Oregon DOJ Claim), and the Italian Proceeding, and also knew that the failure to disclose the same constituted a misrepresentation "which materially affect the acceptance of the risk or the hazard assumed by the Insurer under this Policy."

156.   Because the FTC Lawsuit is a "Claim based upon, arising from, or in consequence, of any such misrepresentation" (*i.e.*, the failure to disclose Vemma was a pyramid scheme, the Arizona Pyramid Arbitration, more than 100 Consumer Complaints (including an Oregon DOJ Claim), and the Italian Proceeding), the Known Claim Exclusion in the 2015-16 Policy excludes coverage for the FTC Lawsuit.

## COUNT VII
## No Pre-Notice Fees and Costs

157.   Hanover incorporates and restates each and every allegation set forth in preceding paragraphs of this Complaint as if alleged in this Paragraph.

158.   The Policy provides that the Defendants will not "incur any expense related to a Claim" without Hanover's consent.

159.   The FTC Lawsuit was filed on August 17, 2015, and Defendants failed to provide Hanover with a copy of the FTC Lawsuit until October 5, 2015.  Accordingly, any pre-notice fees and costs incurred by Defendants related to the FTC Lawsuit are not covered under the Policy.

160.   Pending final resolution of the FTC Lawsuit and the completion of the discovery period in this litigation, Hanover expressly reserves (and does not waive) any and all of its rights, remedies and defenses at law, in equity, and under the 2011-12 Policy, the 2012-13 Policy, the 2013-14 Policy, the 2014-15 Policy, and/or the 2015-16 Policy (and the Policy Applications thereto (and rescission)) including, but not limited to, the right to raise any of the terms, conditions, exclusions and/or endorsements to the 2011-12 Policy, the 2012-13 Policy, the 2013-14 Policy, the 2014-15 Policy, and/or the 2015-16 Policy (and Policy Applications thereto (and rescission)) as warranted.

161.   Plaintiff Hanover is entitled to an award of its attorneys' fees pursuant to A.R.S. § 12-341.01 because this matter arises out of contract.

WHEREFORE, Hanover respectfully requests the following affirmative relief and declaration:

A.   That the 2011-12 Policy (or, alternatively, the 2015-16 Policy) provisions preclude coverage for the Defendants for the FTC Lawsuit;

B.   That Hanover has no duty to defend and no duty to indemnify the Defendants for any "Loss" related to the FTC Lawsuit;

53

C.     That Hanover is entitled to its attorneys' fees, costs and recoverable interest in this action; and

D.     That Hanover is entitled such other and further relief as this Court deems just and equitable under the circumstances.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Hanover Insurance Company hereby demands a trial by jury.

DATED this 15th day of April, 2016.

**SANDERS & PARKS, PC**

By:  s/Mark G. Worischeck
Mark G. Worischeck
Ryan P. Sandstrom
3030 North Third Street, Suite 1300
Phoenix, AZ 85012-3099

James K. Thurston
Daniel Tranen
**WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP**
55 West Monroe Street, Suite 3800
Chicago, Illinois 60603

Attorneys for Plaintiff Hanover Insurance Company

**CERTIFICATE OF SERVICE**

I hereby certify that on April 15, 2016, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing.

By  s/Annalisa Burns