**WO**                              NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Hanover Insurance Company, | No. CV-16-01071-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Vemma International Holdings Incorporated, *et al.*, | |
| Defendants. | |

At issue is the Application for Preliminary Injunction filed by Defendants Vemma Nutrition Company, Vemma International Holdings, Inc. (collectively, "Vemma") and Benson K. Boreyko (Doc. 23, PI App.), to which Plaintiff Hanover Insurance Company filed a Response (Doc. 30, PI Resp.) and Defendants filed a Reply (Doc. 41, PI Reply). Hanover concomitantly filed two Motions to Strike portions of Defendants' evidence (Docs. 31, 43), to which Defendants filed Responses (Docs. 42, 45). The Court also resolves Hanover's Motion for Judgment on the Pleadings (Doc. 37, MJOP), to which Defendants filed a Response (Doc. 54, MJOP Resp.) and Hanover filed a Reply (Doc. 56, MJOP Reply). The Court heard oral argument on Defendants' Preliminary Injunction Application on June 14, 2016 (Doc. 46).

## I.      BACKGROUND

Vemma has obtained a liability insurance policy from Hanover annually since at least August 2011. The policy includes Directors and Officers (D&O) and Entity

Liability Coverage for Vemma as an "Insured Entity" and Mr. Boreyko, director of Vemma, as an "Insured Individual."

On August 17, 2015, the Federal Trade Commission (FTC) filed a lawsuit against Vemma and Mr. Boreyko, among others, claiming that they violated the FTC Act by (1) making false or misleading statements or omissions regarding the income potential of participants in Vemma's business opportunity, (2) promoting, participating in or assisting others in participating in a pyramid scheme, and (3) providing the means and instrumentalities for the commission of deceptive acts and practices by using promotional materials containing false and misleading statements. Since the inception of the FTC action, Defendants have denied these allegations and defended themselves.

Vemma notified Hanover of the FTC action on September 9, 2015, and subsequently made claims under the 2015-16 Policy for reimbursement of expenses incurred in defending the FTC action. On April 14, 2016, Hanover informed Vemma and Mr. Boreyko that it was denying coverage for the defense of the FTC action under the policy. The next day, Hanover filed the present action, raising seven claims for declaratory relief: (1) Not a "Claim First Made" During 2015-16 Policy Period; (2) Late Notice; (3) Unfair Business Practices Exclusion; (4) Profit/Advantage Exclusion; (5) Dishonesty/Fraud Exclusion; (6) Alternatively, Known Claim Exclusion; and (7) No Pre-Notice Fees and Costs. (Doc. 1, Compl.)

Defendants now ask the Court to enter a preliminary injunction requiring Hanover to cover Defendants' defense in the FTC action by reimbursing them for their defense expenses to date and, going forward, paying their expenses within ten days of receiving invoices until the applicable policy limits are exhausted. (PI App. at 23.) At the same time, Hanover now moves for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c), requesting that the Court dismiss this action by finding that Hanover is entitled to judgment as a matter of law based on a review of the pleadings and judicially-noticed outside materials.

## II.   LEGAL STANDARDS

### A.   Preliminary Injunction

In order to obtain a preliminary injunction, Defendants must show that "(1) [they are] likely to succeed on the merits, (2) [they are] likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in [their] favor, and (4) an injunction is in the public interest." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 9 (2008)). The Ninth Circuit Court of Appeals, employing a sliding scale analysis, has also stated "'serious questions going to the merits' and a hardship balance that tips sharply toward the [movant] can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1078 (9th Cir. 2013) *cert. denied*, 134 S. Ct. 2877 (2014) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011)).

When a movant seeks a mandatory injunction—one that orders a responsible party to take action—rather than a prohibitory injunction—one that orders a responsible party to maintain the status quo—the movant must meet a heightened burden by demonstrating to the court that the facts and law "clearly favor" the movant. *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994) (quoting *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1980)). "In general, mandatory injunctions 'are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages.'" *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878-79 (9th Cir. 2009) (quoting *Anderson*, 612 F.2d at 1114).

### B.   Motion for Judgment on the Pleadings Brought by a Plaintiff

For the purpose of ruling on a Rule 12(c) motion for judgment on the pleadings brought by a plaintiff, the court must accept as true the defendant's allegations and assume that the plaintiff's allegations that the defendant has denied are false. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989). "Judgment

on the pleadings is proper when the [plaintiff] clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Id.* A court may only consider matters outside the pleadings without converting a motion for judgment on the pleadings into a motion for summary judgment if the matters are (1) material properly submitted as part of the complaint, or (2) matters of which the court may take judicial notice. *See id.*; *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

The court may take judicial notice of facts "not subject to reasonable dispute" because they are either: "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201; *see also Lee*, 250 F.3d at 689 (noting that the court may take judicial notice of undisputed "matters of public record"). The court may disregard allegations in a pleading that are contradicted by matters properly subject to judicial notice. *Daniels–Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

## III.   ANALYSIS

### A.   Defendants' Likelihood of Success on the Merits and Hanover's Entitlement to Judgment as a Matter of Law

Defendants contend that they are likely to succeed in showing that Hanover must pay their defense expenses because, under the 2015-16 Policy, they are insured parties, the FTC action is a covered claim made during the policy period, they have met the retention requirements, and no coverage exclusions apply. (PI App. at 5-21.) Hanover's principal argument in opposition mirrors that in Count 1 of its Complaint, namely, that the Court need not even reach the question of whether coverage exclusions apply, because the FTC action is not a claim "first made" during the 2015-16 Policy period and, as such, is not a covered claim under the policy. (PI Resp. at 3-19.) Hanover also argues that, even if the FTC action is a covered claim under the policy, the policy's known claim exclusion applies to bar Defendants' claim, as Hanover spells out in Count 6 of its

Complaint.[1] (PI Resp. at 19-20.) In its Motion for Judgment on the Pleadings, Hanover contends it is entitled from the face of the Complaint to judgment as a matter of law as to Counts 1 (not a claim first made) and 2 (late notice) against Defendants, which would result in a declaration by the Court that Hanover is not bound by the 2015-16 Policy to pay Defendants' defense expenses.[2] (MJOP at 1.)

### 1. Claim First Made

With regard to their request for a preliminary injunction, Defendants must first demonstrate they are likely to succeed on the merits in showing the FTC action is a covered claim under their policy with Hanover. The 2015-16 Policy opens with a declaration that it "applies only to claims first made against the insureds during the policy period." (Doc. 23-1, Ex. A, 2015-16 Policy, Policy Declarations at 1.) Hanover points the Court to Section VI of the Common Policy Terms and Conditions, which provides:

> With respect to the Liability Coverage Parts[,] all Related Claims will be considered as a single Claim made in the Policy Period or Extended Reporting Period in which the earliest of such Related Claims was first made or first deemed to have been made pursuant to the applicable Coverage Part. All Related Claims are subject to the Limits of Liability, Retention and other terms and conditions applicable to the earliest Related Claim.

(2015-16 Policy, Common Policy Terms and Conditions at 3.) The policy defines "Related Claims" as "all Claims based upon, arising from or in any way related to the same facts, circumstances, situations, transactions, results, damage or events." (2015-16 Policy, Common Policy Terms and Conditions at 2.) Hanover contends that the FTC action was not the earliest Related Claim; rather, many Related Claims against Defendants—claims arising from the same facts or circumstances—preceded the FTC action by a number of years. (PI Resp. at 5-6.) And because the FTC action was merely a

---

[1] Hanover does not base its opposition to Defendants' preliminary injunction request on Counts 2-5 or Count 7 of its Complaint. (*See* PI Resp. at 19 n.35.)

[2] Hanover does not explicitly move for judgment on the pleadings with regard to Counts 3-7 of its Complaint. (*See* MJOP at 1.)

Related Claim to claims made in previous years that Defendants never brought to Hanover's attention, the FTC action is not a claim first made under the 2015-16 Policy period. (PI Resp. at 5-6.) This alone, argues Hanover, is fatal to Defendants' request for injunctive relief. (PI Resp. at 6.)

Defendants counter with several arguments, which the Court will address in turn: (1) the Related Claims provision is not, in and of itself, a coverage exclusion; (2) at minimum, some of the FTC's claims against Defendants in the FTC action are not Related Claims and are therefore covered, and Hanover must pay the entire defense cost if any of the FTC's claims are covered under the allocation provision of the policy; and (3) Hanover's construction of "Related Claims" is far too broad and, if adopted, would be beyond Defendants' reasonable expectations and render Defendants' insurance coverage illusory. (PI Reply at 2.)

### a.    Coverage Exclusion v. Related Claim

Defendants argue that Hanover has conceded the FTC action is a claim under the policy and, as such, Hanover has the burden of showing a clear and unambiguous exclusion, which it has not met. (PI Reply at 5.) In support, Defendants make much of the fact that the Related Claims provision is not included as an exclusion in the policy. (PI Reply at 7-8.) They also point out that the policy does include an exclusion for Prior and Pending Proceedings that by its terms excludes far fewer claims than Hanover seeks to exclude by applying the Related Claims provision. (PI Reply at 8.)

Defendants' argument simply ignores the terms of the policy related to covered claims. Hanover concedes the FTC action is a claim under the policy only to the extent that it is a Related Claim—one arising from the same facts or circumstances as claims against Defendants from earlier policy periods that were never brought to Hanover's attention. Hanover does not concede that the FTC action is a claim first made under the 2015-16 policy. By the express terms of the 2015-16 Policy, the Court agrees with Hanover that the Court need not reach policy exclusions if the FTC action is not a claim first made under that policy.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### b.      Relatedness of Claims

In the Complaint, Hanover alleges that the FTC action is a Related Claim to several complaints brought against Defendants in the past. In view of the parties' competing motions— Hanover's Motion for Judgment on the Pleadings and Defendants' Preliminary Injunction Application—the Court has compared the prior claims to the FTC action using two inquiries: (1) accepting as true Defendants' denials of Hanover's allegations in the Complaint, do genuine fact issues remain as to whether the FTC action is a claim first made under the 2015-16 Policy, precluding judgment as a matter of law, and (2) are Defendants likely to succeed on the merits in showing the FTC action is a claim first made under the 2015-16 Policy?

### i.      Judgment on the Pleadings

In their Answer, Defendants deny almost all of Hanover's allegations, and the Court must therefore deem those allegations as false for purposes of Hanover's Motion.[3] In any event, the allegations with regard to all of the prior claims—the Arizona arbitration (Compl. ¶¶ 28-40), the Italian proceeding (Compl. ¶¶ 41-46), the Oregon Department of Justice Consumer Claim (Compl. ¶¶ 48-51), the Arizona Better Business Bureau Consumer Claims (Compl. ¶¶ 52-72), and the FTC Consumer Claims (Compl. ¶¶ 73-117) raise issues which must be developed in discovery. (*See* MJOP Resp. at 14-21.)

For example, among many other issues raised by Defendants in their Response, it is not clear from the Complaint and the associated judicially-noticed public records whether the prior claims with respect to Defendants' alleged operation of a pyramid scheme were based on the same marketing and compensation scheme, or "policies and procedures," as the FTC action. (MJOP Resp. at 15.) The Court agrees with Defendants that the definition of "Related Claim" in the 2015-16 Policy is not so broad as to mean that any former claim using the words "pyramid scheme" precludes any later pyramid

---

[3] The Court does not find Hanover has shown that Defendants' denials in their Answer were made in bad faith or that the Court should disregard the denials.

scheme claim from coverage under the policy. They must arise from the same "facts, circumstances, situations, transactions, results, damage or events" under the policy, (2015-16 Policy, Common Policy Terms and Conditions at 2), which is by its very nature a fact-intensive inquiry.

Specifically, with respect to the 2012 Arizona arbitration, Defendants deny Hanover's allegations in the Complaint that the issue of whether Vemma was a pyramid scheme was brought as a claim against Vemma—which the Court must accept for purposes of Hanover's Motion for Judgment on the Pleadings. Hanover's allegations also do not show as a matter of law that any such claim brought in 2012 was based on the same facts and circumstances as, and thus related to, the FTC action. *See Fin. Mgmt. Advisors, LLC v. Am. Int'l Specialty Lines Ins. Co.*, 506 F.3d 922, 926 (9th Cir. 2007) (finding claims are not "related" simply because they are based on similar misrepresentations where alleged misrepresentations were made to different parties who suffered separate losses). Likewise, Hanover's allegations are insufficient to warrant judgment as a matter of law as to the Italian proceeding—which was based on a separate promotional and compensation scheme, among other issues—or the various consumer complaints—the underlying facts and circumstances of which are insufficiently clear to draw relatedness conclusions.

This is even more so for the other claims the FTC brought in its action against Defendants—those related to Defendants' alleged false or misleading statements or omissions regarding the income potential at Vemma and the associated promotional materials and other instrumentalities allegedly provided by Defendants. It is not clear, for example, that the FTC's accusation that Vemma made false income claims arises from the same alleged wrongful acts as those underlying any prior claims that Vemma was operating a pyramid scheme.

In sum, Hanover's allegations as to prior claims brought to Vemma's attention are not sufficient for the Court to conclude as a matter of law that the prior claims were Related Claims under the policy to those brought in the FTC action. *See Hal Roach*

- 8 -

*Studios,* 896 F.2d at 1550. As a result, for Count 1 of the Complaint, Hanover is not entitled to judgment on the pleadings that the FTC action was not a claim first made under the 2015-16 Policy.

### ii.    Preliminary Injunction

With respect to Defendants' request for a mandatory injunction, the Court must evaluate Mr. Boreyko's likelihood of success on the merits separately from that of Vemma. The parties do not dispute that the policy provides coverage for Mr. Boreyko as an Insured Individual and Vemma as an Insured Entity.[4] The policy's Insuring Agreements provision states as follows:

> The Insurer will pay on behalf of each Insured Individual, Loss which the Insured Individual is legally obligated to pay to a Claim first made against the Insured Individual during the Policy Period . . . .

> The Insurer will pay on behalf of an Insured Entity, Loss which the Insured Entity is legally obligated to pay due to a Claim first made against the Insured Entity during the Policy Period . . . .

(2015-16 Policy, D&O and Entity Liability Coverage Part at 1.)

Hanover points to no evidence that the prior claims were brought against Mr. Boreyko. The FTC action against him is thus a claim first made against him as an Insured Individual under the express terms of the policy. In the Reply to its Motion for Judgment on the Pleadings, Hanover asks the Court to rely on two cases—a memorandum decision of the Arizona Court of Appeals and an out-of-circuit district court order—to conclude that the prior claims against Vemma were claims against Mr. Boreyko also. (MJOP Reply at 10-11.) Neither case addresses the situation here, in which two different insured parties are making claims under the policy but prior related claims may have been brought against only one of them. Nor does either case address language such as that in the Hanover policy. No evidence before the Court indicates that the FTC action is not a claim first made against Mr. Boreyko as an Insured Individual, and Mr. Boreyko is thus likely to succeed on the merits in showing his is a claim first made under the 2015-16 Policy.

---

[4] Indeed, the policy treats Mr. Boreyko, as a non-indemnified individual, differently from Vemma, as a corporate entity, by among other things setting different retention amounts as to each. (2015-16 Policy, D&O Declarations at 1.)

As for Vemma as an Insured Entity, while Hanover is not entitled to judgment on the pleadings as to whether the FTC action is a claim first made against Vemma under the policy, Hanover has produced enough evidence in resisting Vemma's request for a preliminary injunction to raise a serious dispute as to that question. Hanover may be able to demonstrate, for example, that the Arizona arbitration did raise a claim that Vemma was operating a pyramid scheme and that the underlying facts and circumstances were the same as or sufficiently similar to those underlying the FTC's claims in its action against Vemma to make the claims related under the policy. Likewise, Hanover may be able to demonstrate that consumer complaints brought by the Better Business Bureau were claims against Vemma and that they contemplated not only pyramid scheme accusations but also false income claims or omissions. Evaluating the evidence, such as it is at this point in the litigation, it is a close call whether a fact-finder would conclude that the FTC action is a claim first made under the policy. In this respect, the Court cannot conclude that Vemma has met its burden to show that the facts and law are clearly in its favor to warrant a mandatory injunction. *See Stanley*, 13 F.3d at 1320.

### c.      Allocation

Defendants contend that, regardless of Hanover's argument that the FTC's pyramid scheme allegations are a Related Claim to prior allegations, Hanover's refusal to cover them for the FTC action contravenes an allocation provision in the 2015-16 Policy. (PI Reply at 5-6.) They base this contention on the fact that the FTC action includes claims that are not necessarily grounded in alleged pyramidal activity, but rather allegations that Defendants made material misrepresentations and omissions and provided the means and instrumentalities to others for the same purpose. (PI Reply at 6.) Because the prior complaints against Vemma were largely based on pyramidal conduct, Defendants argue that the FTC's misrepresentation-related claims are not Related Claims and Hanover must therefore cover all defense costs pertaining to the FTC action under the allocation provision.  Hanover responds by pointing out that the definition of "Claim" in the relevant Coverage Part encompasses any "written demand . . . for monetary or non-

1   monetary relief," "civil proceeding," and "criminal proceeding," among others, and that a

2   "proceeding" therefore cannot be dissected into the individual legal claims brought in the

3   proceeding. (PI Resp. at 12; 2015-16 Policy, D&O and Entity Liability Coverage Part at

4   2.)

5          The express language of the allocation provision belies Hanover's assertion that a

6   lawsuit cannot be dissected in this way. The relevant Coverage Part of the 2015-16 Policy

7   provides, "If an Insured incurs Loss on account of any Claim and such Claim includes

8   both covered and non-covered matters," then coverage for the Claim includes "One

9   hundred percent (100%) of Defense Expenses on account of the Claim" subject to some

10  exclusions inapplicable here.[5] (2015-16 Policy, D&O and Entity Liability Coverage Part

11  at 9-10.)

12         In support of its argument against application of the allocation provision, Hanover

13  relies on a memorandum decision of the Arizona Court of Appeals, *SP Syntax LLC v.*

14  *Federal Insurance Company*, No. 1 CA-CV 14-0638, 2016 WL 831532 (Ariz. Ct. App.

15  Mar. 3, 2016).[6] The *SP Syntax* decision has no particular persuasive value here. That case

16  addressed an insurer's treatment of a group of lawsuits as related, but the court's

17  conclusion turned on the fact that the claims in those lawsuits all arose out of the same

18  misrepresentation allegations. *Id.* at *7-8. Moreover, the court was not addressing an

19  allocation clause or the possibility of dissection of a lawsuit into its various legal claims

20  to evaluate relatedness to prior claims. Here, the FTC action involves a claim of

21  pyramidal conduct, which may or may not be a Related Claim to prior complaints against

22  Vemma under the policy, and separate claims of material misrepresentations, omissions

23  and the provision of means and instrumentalities to others. While a multiple-claim

24  _____

25         [5] Because the policy refers to losses incurred by "an Insured," the Court does not
    construe the allocation provision as requiring payment of the uncovered expenses of one
26  Insured—Vemma—on account of the fact that the expenses of a different Insured—Mr.
    Boreyko—may be covered.
27
           [6] Arizona Supreme Court Rule 111 allows citation of a memorandum decision
28  published after January 1, 2015 for persuasive value if "no opinion adequately addresses
    the issue before the court."

lawsuit may be related in its entirety to a prior complaint when it arises from the same facts or circumstances, the express terms of the allocation provision in the 2015-16 Policy allow dissection of a lawsuit into its individual claims. That is, the policy contemplates that a lawsuit comprised of divergent legal claims based on different facts may contain both Related Claims to prior complaints and claims unrelated to any complaints previously brought against the insured.

While it is unclear whether the FTC's non-pyramid scheme claims against Defendants arise from the same "facts, circumstances, situations, transactions, results, damage or events," as the prior pyramid scheme-based complaints brought against Vemma, there is at least a genuine dispute as to that question, as the Court noted above. (*See* 2015-16 Policy, Common Policy Terms and Conditions at 2.) For example, one of the consumer complaints stated,

> The basis of Vemma is a get rich program that entices young minds to pursue a part time job making an unlimited income and earning a free car for their efforts. . . . Not only did [my son] drop out of college, but he has been living on the streets in his car for the past three weeks. My son has been persuaded, by Vemma's training and negative influences, to have unrealistic expectations for earning an income.

(Compl. ¶ 77.) As a result, the Court cannot conclude that the facts clearly favor Defendants in showing success on the merits that the allocation provision mandates that Hanover pay Vemma's defense costs.

### d.    Reasonable Expectations and Illusory Coverage

In its Response to Defendants' Preliminary Injunction Application and in oral argument, Hanover asked the Court to narrowly construe "Claims first made" and, conversely, broadly construe "Related Claims," recognizing that its suggested constructions would preclude a range of claims against Defendants from coverage under the 2015-16 Policy. (PI Resp. at 16; June 14, 2016 Hr'g Tr. 48:7-23.) Defendants argue that Hanover's suggested interpretation of "Claims first made" is so narrow—and "Related Claims" is so broad—that the resulting coverage would be below Defendants'

reasonable expectations and would render the insurance policy illusory. (PI Reply at 8-10.)

To begin with, the Court does not accept an overly broad or generalized construction of "Related Claims" under the policy. As stated above, a prior claim regarding the operation of a pyramid scheme is not necessarily a Related Claim to any future accusation of pyramid scheme operation. The policy provides that the claims must arise from the "same facts, circumstances, situations, transactions, results, damage or events." (2015-16 Policy, Common Policy Terms and Conditions at 2.) Determination of relatedness thus requires a claim-by-claim comparison and an analysis of the basis of each claim.

In Arizona, courts have adopted the "reasonable expectations rule" from the Restatement (Second) of Contracts when construing insurance contracts; that rule holds the contract drafter to a good faith standard by requiring an interpretation of the contract that accounts for the parties' reasonable expectations. *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 682 P.2d 388, 398-99 (Ariz. 1984). "Of course, if not put in the proper perspective, the reasonable expectations concept is quite troublesome, since most insureds develop a 'reasonable expectation' that every loss will be covered by their policy." *Id.* at 395. An insurance contract, like any other contract, "should be read in light of the parties' intentions as reflected by their language and in view of all the circumstances." *Id.* at 393 (quoting *Smith v. Melson*, 659 P.2d 1264, 1266 (Ariz. 1983)). Under Arizona law, parties are free to bargain for limitations on coverage, so long as the limitations are not inconsistent with public policy, and the reasonableness of a party's expectations as to coverage goes beyond the party's subjective expectations to an objective examination of reasonable expectations considering the entire circumstances of the contract. *Aetna Cas. & Sur. Co. v. Dannenfeldt*, 778 F. Supp. 484, 492-93 (D. Ariz. 1991).

Defendants argue that Hanover's broad interpretation of the policy's Related Claims term would violate their reasonable expectations, stating "a single letter

complaining about Vemma sent to any state or federal agency, the Better Business Bureau, or any of the regulators in the 47 countries in which Vemma previously operated could be sufficient to defeat coverage years later in bet-the-company litigation." (MJOP Resp. at 4.) Hanover argues that its interpretation of the Related Claims term is not as broad as the one Defendants impute to it, stating "a protester walking outside with a sign which says that he wants his money back because Vemma is a pyramid scheme" would not be a claim under the policy. (MJOP Reply at 3.) To the extent that Hanover moves for judgment on the pleadings, the allegations in the Complaint are not sufficient to entitle Hanover to judgment as a matter of law that its interpretation of the policy terms is not beyond Defendants' reasonable expectations. But Defendants do not provide sufficient evidence of, for example, the circumstances of contract formation to show they are likely to succeed on the merits in demonstrating that Hanover's proposed policy construction is beyond their reasonable expectations.

Defendants go further by arguing that Hanover's proposed construction of the Related Claims term in the policy would make their coverage illusory. (PI Reply at 8.) A policy interpretation that would result in no payment of benefits under any reasonably expected circumstances—or "render coverage null"—is illusory. *See Wilshire Ins. Co. v. S.A.*, 227 P.3d 504, 507-08 (Ariz. Ct. App. 2010); *Aetna*, 778 F. Supp. at 493. Here, as Hanover points out, even a broad interpretation of the Related Claims term as it pertains to pyramid scheme allegations would not preclude any other kind of claim against Defendants, such as for "sexual harassment by one of their workers, or for failure to prudently invest the 401(k) monies, or permitting outside hackers to access names and addresses of program affiliates." (MJOP Reply at 7.) Defendants' argument that the policy terms—even as construed by Hanover—render their coverage illusory lacks merit. But, as perhaps a more relevant point, the policy does not unequivocally provide that a claim of sexual harassment by one of Defendants' workers precludes a later claim of sexual harassment by one of Defendants' workers under the Related Claims term. The same goes for pyramid scheme allegations.

1

2.      **Known Claim Exclusion and Notice Provision**

2       In its Response to Defendants' request for a preliminary injunction, Hanover

3   argues that the 2015-16 Policy's known claim exclusion applies to bar Defendants'

4   insurance claim, as it raised in Count 6 of its Complaint. (PI Resp. at 19-20.) Apparently

5   abandoning that argument by not moving for judgment on the pleadings with respect to it,

6   Hanover does move for judgment on the pleadings as to Count 2 of its Complaint, which

7   claims that the 2015-16 Policy's notice provision applies to bar Defendants' insurance

8   claim. (MJOP at 19-21.)

9       With regard to Hanover's known claim exclusion argument, Defendants answered

10  "No" to the question in the 2015-16 Policy Application asking, "Is any Insured proposed

11  for coverage aware of any fact, circumstance, or situation that might reasonably be

12  expected to result in a Claim that would fall within the scope of the proposed Liability

13  Coverage Parts?" (Doc. 1-3 at 81-89, Application at 3.) Hanover does not present

14  sufficient evidence to support a conclusion that Defendants were aware of the basis for a

15  claim under the Coverage Parts such that they answered the question inaccurately.[7]

16  Moreover, as Defendants point out in their Preliminary Injunction Application and Reply

17  (PI App. at 21-22; PI Reply at 15-16), Arizona law provides that, to apply such an

18  exclusion, an insurer must demonstrate that the insured's misrepresentation was

19  fraudulent and material to the risk assumed by the insurer and that the insurer would not

20  have provided the policy if the additional facts had been known to the insurer. *See* A.R.S.

21  § 20-1109. Hanover makes no such showing, and the Court must therefore find that

22  Defendants are likely to succeed on the merits in showing that the known claim exclusion

23  does not bar coverage for the defense of the FTC action under the 2015-16 Policy.

24      With regard to Hanover's notice provision argument in its Motion for Judgment on

25  the Pleadings, the 2015-16 Policy provides that the insured must inform the insurer of a

26

27      [7] Aside from the lack of factual support for its argument, Hanover relies on an
unpublished Middle District of Tennessee case for legal support. *See Hale v. Travelers
Cas. & Sur. Co. of Am.*, No. 3-14-1987, 2015 WL 6737904 (M.D. Tenn. Nov. 4, 2015)
28  (appeal filed to 6th Circuit Court of Appeals). Because that case applies Tennessee law,
not Arizona law, and evaluates a distinct known claim exclusion, it is inapposite here.

claim under the policy within 90 days after such claim is first made. (2015-16 Policy, Directors & Officers and Entity Liability Coverage Part at 9.) This is essentially a rehashing of Hanover's No Claim First Made allegation in Count 1,[8] and the Court cannot conclude from the allegations in the Complaint and judicially-noticed materials that the prior complaints against Vemma were related claims to the FTC action, such that Defendants failed to comply with the notice provision as a matter of law.

### 3.       Summary of Merits Analysis

In sum, the Court cannot conclude that the facts and law clearly favor Defendants in showing a likelihood of success on the merits that the FTC action was a claim first made against Vemma under the 2015-16 Policy, that the allocation provision mandates that Hanover pay Vemma's defense costs, or that the policy as applied by Hanover was below Defendants' reasonable expectations. However, the Court concludes that the facts and law clearly favor Defendants in showing that the FTC action was a claim first made against Mr. Boreyko under the 2015-16 Policy such that Hanover would be obligated to pay Mr. Boreyko's defense costs.

As for Hanover's Motion for Judgment on the Pleadings, Hanover has failed to show that the allegations in the Complaint and associated judicially-noticed materials entitle Hanover to judgment as a matter of law with respect to the Counts it placed at issue, Counts 1 (not a claim first made) and 2 (late notice) against Defendants. The Court will therefore deny the Motion for Judgment on the Pleadings.

### B.       Irreparable Harm

Under the second element of the preliminary injunction test, Defendants must show they are likely to suffer irreparable harm in the absence of preliminary relief. *Garcia*, 786 F.3d at 740. The Supreme Court has repeatedly recognized the "basic doctrine of equity jurisprudence that courts of equity should not act . . . when the moving

---

[8] Hanover again relies on *Hale*, 2015 WL 6737904, for legal support, and it is unpersuasive for the reasons the Court already gave.

party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Younger v. Harris*, 401 U.S. 37, 43-44 (1971).

To show likelihood of irreparable harm, Defendants cite a line of cases from other district courts holding that failure to advance defense costs under an insurance policy cannot be remedied by money damages and constitutes irreparable harm. (PI App. at 21-22.) For example, in *In re WorldCom, Inc. Securities Litigation*, the Southern District of New York noted that the refusal by an insurance company to advance defense costs is an immediate and direct injury, and its consequence is that the insured does not receive the "protection from financial harm that insurance policies are presumed to give." 354 F. Supp. 2d 455, 469 (S.D.N.Y. 2005) (internal quotations omitted). The Court continued:

> Every party, including each director defendant, requires effective representation. It is impossible to predict or quantify the impact on a litigant of a failure to have adequate representation at this critical stage of litigation. The ability to mount a successful defense requires competent and diligent representation. The impact of an adverse judgment will have ramifications beyond the money that will necessarily be involved. There is the damage to reputation, the stress of litigation, and the risk of financial ruin—each of which is an intangible but very real burden.

*Id.*; *see also XL Specialty Ins. Co. v. Level Global Invs., L.P.*, 874 F. Supp. 2d 263, 272-73 (S.D.N.Y. 2012) (collecting cases). In response, Hanover cites cases outside the insurance context holding that purely money damages do not constitute irreparable harm. (PI Resp. at 20.)

The Court agrees with the other district courts holding that the insurer's refusal to advance defense costs is an immediate and direct injury to the insured and that the injury is comprised of more than simply money damages. Here, not only the reputation of Vemma and Mr. Boreyko are at stake, (*see* Doc. 21, Boreyko Decl. ¶ 35), but they have produced evidence of at least the potential for financial ruin, (*see* Boreyko Decl. ¶ 25). Hanover has moved to strike some of Mr. Boreyko's averments that Defendants provided in support of their irreparable damage argument. (Doc. 31.) The Court does not find that the relevant statements—that Vemma has incurred $1.3 million in defense costs or that it has suffered financial difficulty as a result of the injunctive relief the Court entered in the

1    FTC action—are particularly conclusory or otherwise inadmissible. The Court will thus

2    deny Hanover's motion to the extent the Court relied on statements in Mr. Boreyko's

3    Declaration.[9] The Court finds Defendants have met their burden to show irreparable harm

4    in the absence of injunctive relief. *See In re WorldCom*, 354 F. Supp. 2d at 469.

5            **C.      Balance of Equities and the Public Interest**

6            Defendants have also met their burden as to the third and fourth elements of the

7    preliminary injunction test, namely, that the balance of equities tips in their favor and an

8    injunction is in the public interest. *See Garcia*, 786 F.3d at 740. As other courts have

9    noted, without the wherewithal to mount an effective defense, Defendants face an

10   increased risk of serious civil damages as well as damage to their reputations and the

11   business itself. *See, e.g.*, *XL Specialty Ins. Co.*, 874 F. Supp. 2d at 276. Hanover, by

12   contrast, will suffer at most a financial loss if it prevails in demonstrating it is not

13   obligated by the 2015-16 Policy to cover Defendants' defense costs in the FTC action and

14   is unable to recoup the costs from Defendants. The balance of equities thus weighs in

15   Defendants' favor.

16           Likewise, granting an injunction mandating the payment of defense costs under

17   the terms of an insurance policy is in the public interest. Public policy, as reflected by

18   both the case law and relevant statutes, favors holding an insurer to the terms of an

19   insurance policy after the insured has duly paid its premiums.

20           **D.      Surety Bond**

21           Federal Rule of Civil Procedure 65(c) permits a court to enter preliminary

22   injunctive relief "only if the movant gives security in an amount that the court considers

23   proper to pay the costs and damages sustained by any party found to have been

24   wrongfully restrained." A court may only "dispense with the filing of a bond when it

25   concludes there is no realistic likelihood of harm to the defendant from enjoining [its]

26

27        [9] Because the Court-appointed Monitor in place at Vemma provides the Court with periodic financial reports of Vemma's operations, the Court is also aware that, while Vemma is currently generating positive net operating income before depreciation, it has

28   suffered   income losses on account of the expenses incurred by the Temporary Restraining Order and Preliminary Injunction.

- 18 -

conduct." *Jorgensen v. Cassidy*, 320 F.3d 906, 919 (9th Cir. 2003). The court must make a finding as to the surety bond amount it considers proper. *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009).

In this instance, the parties provided no briefing on the amount of surety bond that would be proper. Although the negotiated terms of the policy set the retention amount at zero for claims by Mr. Boreyko (2015-16 Policy, D&O Declarations at 1), the Court declines to set the preliminary injunction surety bond amount at zero, because Hanover may incur damages upon an ultimate determination that it was wrongfully restrained if Mr. Boreyko cannot repay the defense expenses covered by Hanover. *See Jorgensen*, 320 F.3d at 919. However, setting a surety bond at the entire amount of the defense expenses would undermine the protection the insurance policy is meant to provide the insured. *See XL Specialty Ins. Co.*, 874 F. Supp. 2d at 291-92. Thus, the Court in its discretion will set the surety bond amount at $50,000.

### E.    Evidentiary Motions

As the Court stated above, the Court will deny Hanover's Motion to Strike Portions of Mr. Boreyko's Declaration (Doc. 31) to the extent the Court relied on statements in Mr. Boreyko's Declaration (Doc. 21) to reach its conclusions as to irreparable injury to Defendants in the absence of injunctive relief. The Motion is otherwise denied as moot.

With regard to Hanover's Motion to Strike New Facts in Defendants' Reply (Doc. 43), the Court did not rely on the any of the facts Hanover disputes in reaching its conclusions as to Defendants' Application for Preliminary Injunction. The Court will therefore deny this Motion as moot.

## IV.   CONCLUSIONS

With regard to Defendant Mr. Boreyko, an Insured Individual under the 2015-16 Policy, the Court concludes that Defendants have demonstrated the law and facts clearly favor Mr. Boreyko in showing a likelihood of success on the merits, Defendants are likely to suffer irreparable harm in the absence of preliminary relief, the balance of

equities tips in Defendants' favor, and an injunction is in the public interest. Because Defendants are likely to succeed on the merits in demonstrating there is no impediment under the 2015-16 Policy to Hanover's obligation to advance the defense costs in the FTC action with respect to the claims against Mr. Boreyko, the Court will enjoin Hanover from withholding payment of the defense expenses incurred on behalf of Mr. Boreyko and order payment of the defense expenses incurred to date pursuant to the policy. Attendant to this injunctive relief, Mr. Boreyko must give security in the amount of $50,000 under Rule 65(c).

As for Vemma, an Insured Entity under the 2015-16 Policy, because the Court finds that the facts and law do not clearly favor Defendants in showing a likelihood of success on the merits that the FTC action was a claim first made against Vemma under the 2015-16 Policy, that the allocation provision mandates that Hanover pay Vemma's defense costs, or that the policy as applied by Hanover was below Defendants' reasonable expectations, the Court declines to enter a mandatory injunction for payment of Vemma's defense expenses in the FTC action.

The Court will deny Hanover's Motion for Judgment on the Pleadings (Doc. 37), because Hanover has failed to show that the allegations in the Complaint and associated judicially-noticed materials entitle it to judgment as a matter of law with respect to the Counts it placed at issue, Counts 1 (not a claim first made) and 2 (late notice) against Defendants. The Court will also deny Hanover's two evidentiary motions. (Docs. 31, 43.)

IT IS THEREFORE ORDERED granting in part and denying in part the Application for Preliminary Injunction filed by Defendants Vemma Nutrition Company, Vemma International Holdings, Inc. and Benson K. Boreyko (Doc. 23). Plaintiff Hanover Insurance Company is enjoined from withholding payment of the defense expenses incurred in the FTC action on behalf of Mr. Boreyko, as an Insured Individual, and ordered to pay the defense expenses incurred to date on his behalf pursuant to the 2015-16 Policy. Attendant to this injunctive relief, Mr. Boreyko must give security in the

amount of $50,000 under Rule 65(c). The balance of Defendants' request for injunctive relief is denied.

IT IS FURTHER ORDERED denying Plaintiff Hanover Insurance Company's Motion for Judgment on the Pleadings (Doc. 37).

IT IS FURTHER ORDERED denying Plaintiff Hanover Insurance Company's Motion to Strike Portions of Affidavit of Defendant Benson K. Boreyko (Doc. 31).

IT IS FURTHER ORDERED denying as moot Plaintiff Hanover Insurance Company's Motion to Strike New Facts in Defendant's Reply (Doc. 43).

Dated this 29th day of July, 2016.

_____
Honorable John J. Tuchi
United States District Judge